**SHAMROCK ASSOCIATES, a limited partnership, by and through its General Partners, Myron S. Gelbach, David B. Blanchard, and Natalie I. Koether, on behalf of itself and all others similarly situated, Plaintiff,**

v.

**MORAGA CORPORATION, Apex Oil Company, a general partnership, Apex Holding Co., Novelly Oil Company, Inc., Goldstein Oil Company, Inc., Paul A. Novelly, Samuel R. Goldstein, La Mesa Energy Corporation, John P. Castellucci, Defendants.**

Civ. A. No. 82–164.

United States District Court,
D. Delaware.

Jan. 27, 1983.

William Prickett and Michael Hanrahan of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., Herbert E. Milstein, Steven J. Toll and Ann C. Yahner of Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., and Harold E. Kohn of Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., of counsel, for plaintiff.

Michael D. Goldman and David Baldwin of Potter, Anderson & Corroon, Wilmington, Del., for defendants Apex Oil Co., Apex Holding Co., Novelly Oil Co., Inc., Goldstein Oil Co., Inc., Paul A. Novelly and Samuel R. Goldstein.

David A. Drexler and Thomas John Allingham, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Stuart J. Gordon of Baskin & Sears, P.C., Washington, D.C., of counsel, for defendants Moraga Corp., La Mesa Energy Corp. and John P. Castellucci.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This suit is purportedly brought as a class action by Shamrock Associates ("Shamrock"), a New Jersey limited partnership and minority shareholder in defendant Moraga Corporation ("Moraga"), a Delaware corporation with its principal place of business in California, for damages resulting from alleged violations of Sections 10(b), 14(a) & 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a) & 78t(a), and the rules promulgated thereunder, Rule 10b–5, 17 C.F.R. § 240.10b–5; and Rule 14a–9, 17 C.F.R. § 240.14a–9. Also named as defendants are Apex Oil Company ("Apex"), a Missouri general partnership; Apex Holding Company ("Apex Holding"), a Missouri corporation and wholly-owned subsidiary of Apex; Novelly Oil Company, Inc. ("Novelly Oil"), a Missouri corporation; Goldstein Oil Company ("Goldstein Oil"), a Missouri corporation; Apex's president and chief executive officer, Paul A. Novelly, a Missouri resident; Goldstein Oil's president, Samuel R. Goldstein, a Missouri resident; La Mesa Energy Corporation ("La Mesa"), a California corporation; and La Mesa's president, John P. Castellucci, a California resident.[1] Shamrock is suing on behalf of itself and all other Moraga shareholders "who purchased shares of the common stock of Moraga during the period from December 1, 1980 to January 15, 1982

and who owned Moraga stock as of January 15, 1982." (Docket Item ["D.I."] 1, at 4.) All the defendants have moved to dismiss the action.

## ALLEGATIONS OF COMPLAINT

Shamrock alleges that as a result of defendants' activities Moraga was transformed from "a cash-rich company into a shell of its former self." (D.I. 33, at 5.) This activity allegedly began in 1980, when Moraga announced in a July 19, 1980 proxy statement, regarding the sale of some stock to Apex, that it was the intention of management to "diversify and expand" Moraga's operations through the acquisition of various businesses. At that time, Apex owned 9.6% of Moraga's outstanding common stock. As a result of the latter sale, Shamrock calculates that Moraga increased its cash holdings to about $20 million. (D.I. 1, at 7.)

From approximately June 6, 1980 to December 1, 1980, Apex, through its subsidiary Apex Holding, purchased a significant number of shares of Moraga, so that by February 1981, Apex had become the majority shareholder of Moraga. (D.I. 1, at 8.)

On October 22, 1980, Moraga purchased 21% of the shares (1,031,800) of Enterprise Development Group ("EDG") and announced its intention to "seek a business combination" with EDG. (D.I. 1, at 8.) During January and February of 1981, Shamrock purchased, on the open market, 19,810 shares of Moraga and approximately 487,700 shares (approximately 10.1%) of EDG. *Id.* Moraga and Shamrock thereafter entered into an agreement in April, 1981, with a closing date of May 15, 1981, whereby Shamrock would sell its EDG shares to Moraga. One day before the closing, Moraga and Apex Holding entered into an agreement, subject to the approval of Moraga's shareholders, whereby Apex Holding would purchase all of Moraga's shares of EDG, including the shares to be tendered by Shamrock.

1. Paul A. Novelly has a controlling interest in Novelly Oil. Goldstein Oil and Novelly Oil are the general partners of Apex.

On September 15, 1981, Moraga sent to its shareholders a proxy statement regarding the sale of EDG stock to Apex Holding which informed them that a shareholder vote regarding the transaction would be taken on October 23, 1981. The proxy statement mentioned that Moraga had originally intended, as previously stated, to enter into a business combination with EDG, but that due to certain business considerations,[2] it was more prudent to sell the EDG shares and utilize the corporation's cash assets to gain control of an operating company. (D.I. 1, at 10.)

Thereafter, on October 12, 1981, Apex Holding sold its 52.7% interest (approximately 714,559 shares) in Moraga to La Mesa. In a subsequent 13–D filing with the SEC, La Mesa disclosed "that $1 million would be represented by bank loans which had not yet been arranged or provided." (D.I. 1, at 11.) Moraga explained in a news release on December 3, 1981, that La Mesa had completed the purchase of 52.7% of Moraga stock from Apex Holding for approximately $10 million and that Moraga had purchased La Mesa's gas stations for $18 million, with $9,674,000 paid in cash and the balance of the price paid in the form of assumed liabilities.

In a subsequent amendment to its Schedule 13–D, dated December 11, 1981, La Mesa disclosed the terms of the sale of the gas stations to Moraga, stating that most of the sale proceeds were used by La Mesa to repay loans obtained from the Wells Fargo Bank for the purchase of the Moraga stock. The amendment disclosed, in addition, that as part of the transaction, Moraga had purchased inventory, equipment, and supplies for approximately $1.4 million and that

2. The proxy statement disclosed that if Moraga had entered into the business combination with EDG, the Moraga shareholders would have been relegated to a minority position in the new company. (D.I. 1, at 9–10.)

3. According to the complaint, the relevant SEC filings and news releases are: Moraga's first quarter report for the period ending October 31, 1980; Apex Holding's Schedule 13–D filed on approximately December 1, 1980; the April 9, 1981 Moraga news release; Moraga's 1981 annual report and 10–k form filed on approxi-

Moraga had assumed a bridge loan that La Mesa had with Wells Fargo for $4.3 million. As part of the original La Mesa loan agreement, Castellucci, the president of La Mesa, had guaranteed the loan. Subsequently, Moraga paid $2.3 million to Wells Fargo, thereby reducing the loan to $2 million. As a result of this payment, Castellucci was released from personal liability on the loan and the collateral that he had pledged against the loan was released.

## PLAINTIFF'S CONTENTIONS

Shamrock alleges that the above activities violated the federal securities laws because of the defendants' failure to disclose, as well as their false representations of, certain material facts in the various SEC filings and news releases made in the course of the transactions.[3]

At the outset, it must be noted that the allegations of the complaint are exceedingly vague. The complaint is silent as to which defendants committed each of the various acts that are alleged to be violative of the federal securities laws. Rather, the complaint generally refers in all of its allegations to "the defendants," without any further specificity as to any particular defendants and states that all the defendants' activity was part of a conspiracy. It is thus impossible for this Court to determine which defendants committed the various alleged federal securities violations.

The allegations themselves can be separated into two categories. First, there are those allegations that concern Moraga's sale of its EDG stock to Apex Holding. Shamrock contends that with regard to this transaction:

mately September 4, 1981; the October 23, 1981 Moraga proxy statement; Moraga's 8–k filed on approximately October 21, 1981; La Mesa's Schedule 13–D and amendments thereto filed on approximately October 19, 1981 and December 11, 1981; the November 24, 1981 Moraga news release detailing first quarter earnings for the period ending October 31, 1981; the December 3, 1981 Moraga news release; and the January 15, 1982 Moraga first quarter report for the period ending October 31, 1982. (D.I. 1, at 13.)

a. The defendants falsely represented material facts concerning Moraga and Apex Holding's purchases of EDG and failed to adequately disclose that it was Apex Holding's intention to appropriate Moraga's interest in EDG;

b. The defendants falsely represented material facts regarding Moraga's investments and course of business in general, and in particular with regard to EDG, and failed to adequately disclose Apex Holding's utilization of Moraga to accomplish Apex Holding's corporate purposes;

c. The defendants falsely represented and failed to adequately disclose material facts regarding what was in the best interests of Moraga's shareholders with respect to Moraga's purchase of EDG shares and subsequent sale of those shares to Apex Holding;

d. The defendants falsely represented material facts regarding Moraga's goal of acquiring control of operating companies and failed to adequately disclose that Moraga was being utilized for different purposes by defendants, in particular as a vehicle for Apex Holding to acquire control of EDG, . . . .

(D.I. 1, at 13–14.)

The second category of allegations concern the Apex Holding sale of Moraga stock to La Mesa and the La Mesa sale of its gas stations to Moraga. Specifically, Shamrock contends that:

The defendants falsely represented material facts regarding Moraga's goal of acquiring control of operating companies and failed to adequately disclose that Moraga was being utilized for different purposes by defendants . . . for La Mesa to dispose of assets of little value and relieve La Mesa's president, defendant Castellucci, from his guarantee on a $4.3 million loan for which he had pledged assets owned by him as collateral;

e. Defendants falsely represented and failed to adequately disclose that a purpose of all these transactions as set forth above was to obtain for defendants Apex, Apex Holding, and its subsidiaries and controlling shareholders the cash assets of Moraga.

f. The defendants falsely represented and failed to adequately disclose that the defendant La Mesa and the defendant Castellucci would and did substitute in Moraga assets of a lesser value than the cash assets of Moraga.

g. The defendants falsely represented and failed to adequately disclose material facts regarding the value and condition of the gasoline operations obtained from La Mesa;

h. The defendants falsely represented and failed to adequately disclose material facts regarding the condition of and negative outlook for the gasoline station business in California;

i. The defendants falsely represented and failed to adequately disclose material facts regarding the financial condition of La Mesa, La Mesa's extensive borrowings, the personal guarantees of its president, defendant Castellucci, and other factors relating to the credit worthiness of La Mesa; . . . .

(D.I. 1, at 14–15.)

Shamrock orally clarified the thrust of its allegations at a hearing held on defendants' motions to dismiss. Specifically, Shamrock argued that the basis for liability centers upon Moraga's assertion, through its various statements and filings, that it intended to purchase an operating business. (D.I. 40, at 27–28.) Instead of following this course of conduct, Shamrock contended, Moraga acted in a manner that resulted in Apex Holding selling its Moraga shares at a premium and La Mesa selling its "weak" assets to Moraga, thereby depleting the Moraga treasury. *Id.* Shamrock argued that the disclosure to purchase an operating company was the key disclosure and that the defendants' activity was "wholly inconsistent" with this disclosure. *Id.* at 28. Shamrock further contended that although La Mesa appears to have entered the activities at a later stage, it actually aided and abetted in "this conspiracy . . . which belied the only important disclosure that was made by these defendants to the public . . . ." *Id.* at 28–29.

## DEFENDANTS' MOTION TO DISMISS

All the defendants[4] have moved to dismiss the complaint for failure to state a claim or, in the alternative, to require Shamrock to state with particularity the acts of fraud alleged in the complaint pursuant to Federal Rule of Civil Procedure 9(b). Specifically, the defendants contend that as to the Section 10(b) claims, Shamrock has failed to allege that the defendants purchased or sold any of their Moraga stock to Shamrock or the putative class members or that the defendants made false or misleading public statements in a manner reasonably calculated to influence the public. (D.I. 15, at 2; D.I. 18, at 3.) In particular, the defendants aver, the complaint fails to allege that Castellucci or La Mesa made any public statement prior to Shamrock's last purchase (D.I. 15, at 2), and that there is no allegation that the one statement issued by Moraga prior to Shamrock's last purchase contained any material misstatement. (D.I. 18, at 3.) At most, the defendants argue, Shamrock's allegations may state a claim for breach of state law fiduciary duties. (D.I. 18, at 3.) In addition, the defendants contend that since Shamrock made all of its stock purchases in January and February of 1981, these transactions could not have been "in connection with" any of the alleged material omissions or misstatements which, according to the complaint, occurred subsequently in time. Thus, the defendants contend, Shamrock is an inappropriate class representative. The defendants further contend that Shamrock has failed to state a claim under Section 14(a) for a number of reasons: (1) Shamrock has failed to allege reliance on any proxy statement, (2) there is no allegation that Moraga made a misstatement of material fact in its proxy solicitation, and (3) there is no allegation that the Moraga sale of EDG stock was unfair to the Moraga shareholders and thus there is no proof of any damage to the plaintiff. Again, the defendants argue that any misstatements or omissions alleged by Shamrock to violate Section 14 are at most state law breaches of fiduciary duty and not violations of the federal securities laws. The defendants argue that Shamrock's claims, particularly the charge that there was a conspiracy, are so vague and conclusory that they must be dismissed pursuant to Federal Rule of Civil Procedure 9(b).

## THE "IN CONNECTION WITH" REQUIREMENT AND THE SECTION 14 CLAIMS

Although Shamrock did purchase shares of Moraga so as to satisfy the purchaser/seller requirement, defendants contend that these purchases were not made "in connection with" any misleading statements or material omissions by the defendants.

In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court made clear that in order to bring a 10b–5 cause of action, the plaintiff must have bought or sold a security in connection with some fraudulent activity; thus, a nontrader would not be a proper plaintiff. *Id.* at 737–38, 95 S.Ct. at 1926. *See Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 464 (C.A. 2), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); *Valente v. Pepsico, Inc.,* 454 F.Supp. 1228, 1236 (D.Del. 1976). Specifically, the *Blue Chip Stamps* Court noted that 10b–5 does not extend to security holders who allege that they would have sold their shares if the correct information had been available nor does it extend to security holders whose shares drop in value "due to corporate or insider activities in connection with the purchase or sale of securities . . . ." 421 U.S. at 737–38, 95 S.Ct. at 1926. *See Broad v. Rockwell Int'l Corp.,* 614 F.2d 418, 437 (C.A.5, 1980). In the majority opinion, Justice Rehnquist pointed to the abuses of federal securities litigation created by vexatious lawsuits, noting:

in the field of federal securities laws governing disclosure of information even a

---

4. Moraga, La Mesa and Castellucci filed their motion on May 14, 1982. (D.I. 15.) On May 24, 1982, defendants Apex Oil, Apex Holding, Novelly Oil, Goldstein Oil, Paul Novelly and Samuel Goldstein filed their motion. (D.I. 18.)

complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment.

421 U.S. at 740, 95 S.Ct. at 1927. *See* T. Hazen, *Corporate Mismanagement and the Federal Securities Act's Antifraud Provisions: A Familiar Path With Some New Detours,* 20 B.C.L.Rev. 819, 841 (1979).

▓ In the case at bar, Shamrock has failed to meet the "in connection with" requirement on the facts alleged in the complaint. Although the claims in the complaint refer generally to the activities of the "defendants," the actual facts alleged in the complaint do not show any involvement by La Mesa or Castellucci with regard to any misstatements or omissions made in connection with Shamrock's purchases of Moraga's stock. In fact, the complaint's mention of La Mesa's and Castellucci's initial involvement occurred in October of 1981 when Apex Holding sold its Moraga shares to La Mesa. This is approximately eight months after Shamrock made its last purchase of Moraga stock and the complaint does not even hint that La Mesa had any prior involvement.

Likewise, the complaint fails to allege any inadequate disclosure by the Apex defendants "in connection with" Shamrock's purchases of Moraga's stock.[5] The complaint alleges that the Apex defendants' only involvement prior to and during the period of Shamrock's purchases were that Apex Holding had bought a majority of Moraga's shares. The Apex defendants' purchase of the EDG shares and sale of its Moraga shares, as alleged in the complaint, did not occur until after Shamrock's purchases were completed.

Although the complaint fails to allege that the Apex defendants, La Mesa, and Castellucci made any purchases or sales directly or indirectly from Shamrock, Shamrock argues that these defendants may still be liable under the exception enunciated in *Securities and Exchange Commission v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (C.A.2, 1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), wherein the Second Circuit held that the "in connection with" requirement could be satisfied by the corporation making a misleading statement which "would cause reasonable investors to rely thereon, and, in connection therewith, so relying cause them to purchase or sell a corporation's securities." 401 F.2d at 860. The Court finds that this exception is inapplicable to Castellucci, La Mesa and the Apex defendants because the complaint fails to allege that these defendants made any statements at all.

With regard to Moraga, the complaint does allege that it did in fact engage in an actual transaction with Shamrock, namely, Moraga's purchase of Shamrock's EDG shares. The complaint, however, fails to allege any facts regarding that transaction which would constitute a violation of 10b–5.

▓ Shamrock does allege that Moraga did in fact make a misleading statement regarding the purchase of the La Mesa gas stations, which it alleges violates § 14 as well as 10b–5. At oral argument, Shamrock contended that Moraga had announced at the time of its sale of its EDG shares to Apex Holding that it was Moraga's intention to buy an "operating company" and that this statement was misleading since Moraga subsequently bought only some worthless gas stations from La Mesa. The Court, however, cannot agree with Shamrock's contention that this constitutes a violation of the federal securities laws. As Moraga had stated, it did subsequently purchase an operating company. Even assuming that the complaint is correct in its allegations that these gas stations were of little value and that Moraga was in a position to purchase a more profitable type of business, the only duty that 10b–5 places upon Mora-

---

5. The Apex defendants consist of Apex Oil, Apex Holding, Novelly Oil, Paul Novelly, Gold-stein Oil, and Samuel Goldstein.

ga in such a case is to adequately disclose the then known material facts in a manner deemed not to be misleading. *Staffin v. Greenberg,* 672 F.2d 1196, 1204 (C.A.3, 1982). To require a corporation to disclose the speculative profitability of future corporate transactions does not fall within the duty of disclosure imposed by 10b–5 or Rule 14a–9. *See Canadian Javelin Ltd. v. Brooks,* 462 F.Supp. 190, 196 (S.D.N.Y.1980). The fact that a corporation's stated business transaction subsequently becomes unprofitable cannot be the basis for a 10b–5 or Rule 14a–9 cause of action. If this Court were to hold otherwise, then a corporation's board of directors would be liable every time it consummated a stated transaction that subsequently turned out to be unprofitable. *See Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (C.A.2, 1982). The federal securities laws are not intended to punish corporations and their agents for poor business decisions. Rather, the federal securities laws are designed to provide adequate disclosure of material facts to investors so they can decide whether to purchase or sell the respective securities; they are "not designed to be the ethical ten commandments for all securities transactions." *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 91 (C.A.5, 1975). To uphold Shamrock's contention would only inhibit corporate conduct and flood the federal courts with the type of vexatious litigation that Justice Rehnquist feared. In light of the severe economic condition that exists in this country today that has hurt the profitability of many corporate business transactions, it appears that to permit this type of litigation would lead to a tidal wave of lawsuits in the federal courts. This Court does not relish the thought of being drenched with such inappropriate federal litigation involving alleged corporate mismanagement.

The plaintiff also attempts to tie all the defendants together by alleging that the defendants acted in a "conspiracy to defraud the Moraga shareholders." The complaint, however, does little more than quote Section 10(b) and use the words "conspiracy," and "aiding and abetting." No specificity whatsoever is given as to the details of this conspiracy. While the Court does not expect the plaintiff to present a highly explicit record of the intricacies of the conspiracy, the plaintiff is required, pursuant to Federal Rule of Civil Procedure 9(b), to state in the complaint the alleged 10b–5 violations with some degree of specificity. Here there is none. As the Second Circuit has stated, "The word 'conspiracy' does not alone satisfy the specificity requirements of Rule 9(b). A complaint cannot escape the charge that it is entirely conclusory in nature merely by quoting such words from the statutes as 'artifices, schemes and devices to defraud' and 'scheme and conspiracy.'" *Segal v. Gordon,* 467 F.2d 602, 608 (C.A.2, 1972). *See Zerman v. Jacobs,* 510 F.Supp. 132, 134 (S.D.N.Y.1981) (Weinfeld, J.). Thus, the plaintiff's conspiracy allegations totally fail to meet the standards of Rule 9(b) for specificity.

Although the facts in the complaint do not state a claim under Rule 10b–5 or 14a–9, this does not mean that Shamrock is without a remedy, for there may be some relief available under state law as to possible breaches of fiduciary duty. In fact, such an action is currently pending in a state court in California.[6] Thus, the case pending before this Court serves only as an attempt to cause a federal court to improperly intrude into the power of the state courts based upon the allegation of an invalid federal securities claim.

The Court, therefore, finds that Shamrock has failed to meet the "in connection with" requirement of Rule 10b–5, nor has it stated a viable cause of action under Rule 14a–9.

THE CLASS CLAIMS

The defendants also contend that Shamrock is an inadequate class representative and therefore the class action should be dismissed. Specifically, the defendants argue that since Shamrock has no valid 10b–5 claim of its own, it cannot represent a putative class, assuming that the class might

---

**6.** *Yett v. Moraga Corp.,* No. 384490 (Orange County, California).

even have a valid claim. In opposition, Shamrock relies upon *Blackie v. Barrack,* 524 F.2d 891 (C.A.9, 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), which held that a plaintiff who purchases or sells at one point in the class period can still adequately represent class members who purchase or sell at different times during the class period. *See Dura Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87 (S.D. N.Y.1981); *Koenig v. Smith,* 88 F.R.D. 604 (E.D.N.Y.1980).

The *Barrack* case, which is the seminal case in this area, focused in particular upon the common questions of law or fact component of a class suit. In this respect, the *Barrack* panel noted that:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may be profitably tried in one suit.

524 F.2d at 902.

■ While the Court acknowledges the viability of the class form in 10b–5 actions, it must be strongly emphasized that the class action is not designed to permit suit where the plaintiff's individual claim has no merit. In the instant case, the Court finds that to permit the plaintiff to sue as class representative would violate the tenets of Federal Rule of Civil Procedure 23. Because Shamrock has failed to allege that it can sue under 10b–5, there is no sound reason for permitting it to represent a putative class of alleged injured shareholders. If Shamrock had been able to adequately allege a valid 10b–5 claim for itself, then perhaps under the *Barrack* ruling this Court would have permitted Shamrock to sue on behalf of a class of similarly situated Moraga shareholders even if some class members

had made their purchases or sales at a date subsequent to Shamrock's purchases. However, because Shamrock has no valid claim of its own, it cannot link itself to a putative class simply by using the phrase "common course of conduct." As this Court stated above, the complaint must allege some degree of specificity as to the violative acts. Here, there are no specific factual allegations that would permit Shamrock to sue on behalf of a class of Moraga shareholders and therefore Shamrock, under the allegations of the complaint, would not be a proper class representative.

## BREACH OF FIDUCIARY DUTY

■ The defendants also contend that at most Shamrock's allegations state a claim for breach of fiduciary duty, which is not actionable under the federal securities laws. In *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court expressly stated that a breach of fiduciary duty absent any allegation of manipulative or deceptive conduct, could not be the basis for a 10b–5 suit. *See Biesenbach v. Guenther,* 588 F.2d 400, 402 (C.A.3, 1978). In this respect, the Supreme Court noted that "the 'fundamental purpose' of the Act [is] implementing a 'philosophy of full disclosure'; once full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute," 430 U.S. at 477–78, 97 S.Ct. at 1303, and that to permit utilization of 10b–5 for such type of conduct would lead to conflict with state corporate law, which, unlike the federal securities laws, are designed to regulate the internal operations of the corporation. *Id.* at 478–80, 97 S.Ct. at 1303–04. Moreover, *Santa Fe* recognized that the overexpansion of Rule 10b–5 was unduly burdening the courts. As Judge Medina had previously noted, "And all this under the aegis of Rule 10(b)(5). This does not seem to be a very practical way of reducing congestion in the federal courts." *Schoenbaum v. Firstbrook,* 405 F.2d 215, 221 (C.A.2, 1968) (Medina, J., dissenting).

In the wake of *Santa Fe,* some federal courts have been able to bring certain activities of corporate mismanagement within the scope of 10b–5, which at first glance appear to be nothing more than breach of fiduciary duty claims. However, upon closer examination these cases reveal an added element that was missing in the factual stance of *Santa Fe:* a misrepresentation or failure to disclose certain material facts regarding some corporate activity which, if such facts had been made to the minority shareholders, could have provided the basis for them to sue under state law to enjoin the corporate activity.[7] *See Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641 (C.A.3, 1980); *Alabama Farm Bureau Mut. Cas. Co. v. American Fidelity Life Ins. Co.,* 606 F.2d 602 (C.A.5, 1979), *cert. denied,* 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980); *Kidwell v. Meikle,* 597 F.2d 1273 (C.A.9, 1979); *Goldberg v. Meridor,* 567 F.2d 209 (C.A.2, 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 54 L.Ed.2d 771 (1978); *Wright v. Heizer Corp.,* 560 F.2d 236 (C.A.7, 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978).

Whether the activity is a breach of state law fiduciary duties is not important; this determination as well as any claim thereof is still within the province of the state courts. What is important in terms of 10b–5 is that the defendants' conduct resulted in disrupting the proper flow of information from the corporation to the shareholders, so that the shareholder was unable to seek an injunction under state law. Thus, if there is a proper flow of information, as envisioned by Congress when it enacted the Securities Exchange Act of 1934, the shareholder will be able to make an informed decision as to whether he should sue in state court to enjoin the transaction.

The importance and necessity for the federal securities laws to protect this flow of information can best be explained through a discussion of two of the leading cases in this area: *Goldberg v. Meridor,* 567 F.2d 209 (C.A.2, 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 54 L.Ed.2d 771 (1978); and *Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641 (C.A.3, 1980), a case that the plaintiff relies upon. Both of these cases represent situations where there was inadequate disclosure as to corporate activity which the shareholder could have enjoined under the applicable state law. The difference between the two cases as to the status of the plaintiff is critical, particularly in light of the facts alleged in the case before this Court and are determinative of the plaintiff's rights in this case.

In *Goldberg,* the corporate conduct in question involved the transfer of the corporation's stock to its parent company in return for the assets and liabilities of the parent. The plaintiff shareholder sued derivatively on behalf of the corporation, alleging that this transaction was the result of "a conspiracy or plan ... for the benefit of" the parent company due to the overvaluation of the parent's assets, *id.* at 211, and that with the proper information, the plaintiff could have sued in state court to enjoin the transaction.

In *Healey,* the plaintiff shareholder brought suit in his individual capacity. The corporate conduct involved the merger of the corporation with another company, which resulted in the shareholders of the corporation exchanging their stock for the preferred stock of the parent of the company into which they were merging. The plaintiff then sued in his individual capacity, not derivatively, alleging that the defendants omitted to disclose certain material information, which omission deprived plaintiff of the opportunity to sue for an injunction in state court to stop the transaction.

Both cases are similar in that if there had been proper disclosure to the shareholders,

---

**7.** Although plaintiff is correct in citing *Pellman v. Cinerama, Inc.,* 503 F.Supp. 107 (S.D.N.Y. 1980), for the proposition that *Santa Fe* does not bar suits where the corporate conduct in question involves both violations of the federal securities laws as well as fiduciary breaches, it is still critical for the plaintiff to show some deception or manipulation in order to resist a dismissal motion.

the respective plaintiffs could have sued in state court to enjoin the transaction. This fact distinguishes *Healey* and *Goldberg* from *Santa Fe,* because the plaintiff in *Healey* and *Goldberg* had the right to sue for an injunction under the applicable state law. 430 U.S. at 474 n. 14, 97 S.Ct. at 1301 n. 14. As Chief Judge Seitz noted in *Healey,* the fact that the undisclosed information could have led the respective plaintiffs to seek an injunction falls under the materiality requirement.

Although the omitted or misrepresented information in *Goldberg* and *Healey* are "material" for the same reason, the fact that the status of the plaintiff differs in each case is an important distinction. Due to the materiality of the omitted or misrepresented facts, the defendants in both cases had a duty to disclose those facts. In this respect, the status of the plaintiff is important because it highlights to whom that duty is owed. In *Goldberg,* it is owed to the corporation; in *Healey,* it is owed to the minority shareholders.

The distinction is drawn based upon the determination of who is the actual purchaser/seller; it is to this party to whom the duty to disclose is owed. In *Goldberg,* where the actual transaction was between the corporation and the defendants, the corporation was the purchaser/seller, not the shareholders and the shareholders could only sue derivatively on behalf of the corporation. *See Superintendent of Insurance v. Banker's Life & Cas. Co.,* 404 U.S. 6, 10, 92 S.Ct. 165, 167, 30 L.Ed.2d 128 (1971); *Goldberger v. Baker,* 442 F.Supp. 659, 663 (S.D. N.Y.1977). In *Healey,* where there was a stock-for-stock transaction,[8] the shareholder was the actual purchaser/seller and could sue directly.

Who the purchaser/seller is becomes important in explaining why such information is pertinent under Rule 10b–5. In the typical stock transaction, there is a sale of stock from one party to another. With adequate

disclosure, the purchaser/seller can decide whether or not to go through with the contemplated transaction and if not, he has the ability to stop the transaction by simply refusing to consummate it. In a corporate mismanagement situation, such as *Goldberg* or *Healey,* if there is adequate disclosure, the plaintiff shareholder can still determine whether or not the transaction is good; but if the shareholder does not want the transaction consummated, he cannot simply refuse to complete it. Rather, the shareholder's only recourse in such instances is to sue in state court for an injunction to stop the transaction. *See Kidwell v. Meikle,* 597 F.2d 1273 (C.A.9, 1979).

Thus, in analyzing a 10b–5 mismanagement claim, it is important to determine whether the duty to disclose is owed to the plaintiff or to the corporation, for the defendants can satisfy this duty in different ways depending upon to whom the duty is owed. If it is owed to the shareholders, the defendants must make their disclosure to the shareholders directly. Such disclosure would similarly satisfy the duty if it is owed to the corporation, but, in such a case, if the board of directors is not a controlled one, and adequate disclosure is made to them, this would seem to satisfy the defendants' duty to disclose as well. *See* H. Bloomenthal, 3B Securities and Federal Corporate Law § 11.16[4], at 11–73, 11–74 (1982); Ferrara & Steinberg, *The Interplay Between State Corporation and Federal Securities Laws,* 7 Del.J.Corp.L. 1, 17 (1982). Moreover, if the plaintiff is suing derivatively, he would have to satisfy the procedural requirements of Federal Rule of Civil Procedure 23.1.

In order therefore to properly analyze a 10b–5 cause of action for corporate mismanagement, the court must determine: (1) whether the corporation or the shareholder is the purchaser/seller; (2) whether the defendants met their duty to disclose; (3) "what information was withheld" (*Hea-*

---

8. The courts recognize that a stock-for-stock transaction, whether voluntary or involuntary on the plaintiff's part, satisfies the purchaser/seller requirement. *Securities and Exchange Commission v. National Securities Inc.,* 393 U.S. 453, 464–67, 89 S.Ct. 564, 570–72, 21 L.Ed.2d 668 (1969); *In re Penn Central Securities Litigation,* 494 F.2d 528, 533 (C.A.3, 1974); *Vine v. Beneficial Finance Co.,* 374 F.2d 627 (C.A.2), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).

*ley, supra,* 616 F.2d at 648); and (4) "whether that information could have been used to obtain a [state law] injunction" (*id.*), or, if the board of directors is not a controlled board and the corporation is the purchaser/seller, whether the board could have used the information to block the transaction.

In applying the above analysis to the present case, the Court notes that under the facts alleged, there may possibly be a valid claim under the federal securities laws and not just a breach of fiduciary duty claim. The court, however, does not have to determine at this juncture whether Shamrock does so state a valid claim, because under the above analysis, the plaintiff's complaint must be dismissed since the plaintiff does not have standing to bring the suit in its present posture.

This Court has already found that upon the facts alleged, Shamrock was not a purchaser/seller at the time of the alleged wrongful acts. Its only alleged damage is that the value of the Moraga stock has dropped, which this Court has already noted is not actionable under 10b–5. Thus, Shamrock's only recourse would have been to sue derivatively on behalf of the corporation, for under the facts alleged, it is the corporation, if anyone, that has a 10b–5 cause of action, since the transaction did not place the shareholders in the status of purchaser/seller. Whether the corporation can be deemed a purchaser/seller in this case is an issue that the Court need not decide at this juncture.[9] All the Court need determine is that upon the facts alleged in the complaint, the plaintiff has failed to state a valid 10b–5 claim.

CONCLUSION

Due to the complexity of this suit, the Court has attempted to consider extensively the various contentions of the parties *seriatim.* In summary, the Court will grant the defendants' motion to dismiss the complaint for the following reasons: (1) Shamrock's complaint fails to satisfy the "in connection with" requirement of 10b–5; (2) the complaint fails to allege that the defendants made any material omissions or misstatements; (3) Shamrock is an inadequate class representative because it has no valid claim of its own; and (4) Shamrock has failed to state a claim under the *Goldberg/Healey* progeny, since it has sued directly for a claim which, if it exists at all, belongs to the corporation.

An order will be entered in accordance with this Memorandum Opinion dismissing the complaint.

---

**9.** The Court, in addition, finds the complaint to be exceedingly vague. There are enough facts in the complaint to decide the legal issues presented. However, aside from the fact that the Court need not decide the viability of the derivative claim at this stage, if the Court had to do so, it would be hard pressed to make such a determination because of the vagueness of the complaint, particularly as to the conspiracy allegations. Moreover, the plaintiff would have to allege additional facts. For instance, in a 10b–5 derivative suit, the plaintiff would have to show a sufficient nexus between the corporation's transactions and the purchase/sale of securities in order to satisfy the requirement that the transaction in question occurred as part of a securities transaction. *See* H. Bloomenthal, Securities and Federal Corporate Law, *supra,* ¶ 11.12.