**Jose H. RODRIGUEZ CADIZ, Plaintiff,**

v.

**Hiram MERCADO JIMENEZ, et al., Defendants.**

**Civ. No. 81–0015 (JP).**

United States District Court,
D. Puerto Rico.

Nov. 30, 1983.

David Efron, Hato Rey, P.R., for plaintiff.

William H. Preston, Hato Rey, P.R., for defendants.

## MEMORANDUM OPINION AND ORDER

PIERAS, District Judge.

This action comes presently before the Court on a motion for summary judgment filed by the defendants on September 12, 1983, whereby they allege lack of federal jurisdiction over the subject matter. Plaintiff filed his opposition and the defendants replied. Oral arguments were held on November 3, 1983.

Plaintiff's alleged ground for federal question jurisdiction is that defendants are liable for damages for violation of the provisions of Section 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. Sec. 78j(b), and Rule 10b–5, promulgated thereunder, which make it unlawful to use deceptive devices or misleading statements in connection with the purchase or sale of any security. This is the only basis upon which subject matter jurisdiction is purportedly conferred upon this Court. Defendants essentially contend that plaintiff is not entitled to sue for violation of Section 10(b) of the Act and Rule 10b–5 because he is not the holder of a security within the meaning of the Act and because no purchase or sale of securities was carried out by either plaintiff or any of the defendants. Moreover, defendants allege that even assuming that additional stocks were issued, as alleged by plaintiff, he has no standing to sue under the Act and the rule promulgated thereunder.

The plaintiff, José H. Rodríguez Cádiz, is a shareholder of codefendant Nutritional Food Service of Puerto Rico, Inc., (Nutri-

tional) a corporation which operates and is organized under the laws of the Commonwealth of Puerto Rico, and is the holder of 333⅓ shares of said corporate entity.[1] He too was a very active employee from August 13, 1976 until August 28, 1980, who worked long and hard hours for the business, only motivated by the interest a partner truly has in the success of his business.[2] Codefendants Hiram Mercado Jiménez and Pedro Borrás also are shareholders of Nutritional, being each owners of 333⅓ shares.[3] All parties to this action are or were residents of Puerto Rico at the time this action was commenced. All outstanding shares of Nutritional were issued on March 26, 1980 and no additional stocks have been furtherly issued.[4]

Basically, plaintiff alleges that codefendants Hiram Mercado Jiménez, Pedro Borrás, William Carter (President of Nutritional, thus an employee) and Rovira García (the corporate attorney) incorporated codefendant Prime Choice of Puerto Rico, Inc., to deprive him from his participation in Nutritional and to affect the value of his shares in said corporation by syphoning funds from Nutritional and using them for Prime Choice. He also alleges that part of this fraudulent conspiracy was to dilute his equity interest in Nutritional when during the year 1980, defendants Mercado and Borrás were awarded 10,000 additional shares of said corporate entity, which represents 1,000% (one thousand percent) or ten times the amount of the total shares originally issued. This, plaintiff alleges, forces him to sell his shares of Nutritional.

However, plaintiff's pleadings contain no allegation of the existence of an agreement between the shareholders limiting the amount of shares to be issued by Nutritional.

Defendants filed a Sworn Statement subscribed by the Secretary-Treasurer of Nutritional in support of their motion for summary judgment, whereby it is stated that the stock book of said corporate entity indicates that on March 26, 1980, an original issuance of 2,333⅓ shares of capital stock took place; that no additional shares of Nutritional have been furtherly issued; and that the original owners of said stocks continue to be the shareholders in the proportion indicated therein.

Plaintiff filed his opposition which essentially consists of a reaffirmation of his allegations in the complaint and a general denial of the law and cases cited by defendants in their Memorandum of Law in Support of Motion for Summary Judgment. It was supported only by a Sworn Statement from plaintiff stating that the contents of the opposition were true. It is well settled that a party opposing a summary judgment motion cannot rest on mere allegations or denials but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e) of the Federal Rules of Civil Procedure; *Security Nat. Bank v. Belleville Livestock Commission Co.*, 619 F.2d 840 (10th Cir., 1979), rehearing denied. To avoid summary judgment, party must support vague accusations and surmise with concrete particulars. *Frito-Lay of Puerto Rico, Inc. v. Cañas*, 92 F.R.D. 384 (D.C.P.R., 1981).

Since there is no genuine issue as to any material fact, defendants are entitled to summary judgment as a matter of law. Even assuming that plaintiff's alleged facts are true and correct, including the alleged issuance of the 10,000 additional shares [5], for the reasons hereinafter stated, defendants are entitled to summary judgment as a matter of law, dismissing this action for lack of subject matter jurisdiction.

---

1. Amended Complaint, paragraph 5; Statement of Material Facts, paragraph 1. Sworn Statement subscribed by the Secretary-Treasurer of Nutritional.

2. Amended Complaint, paragraphs 5 and 16; Statement of Material Facts, paragraph 3.

3. There is an additional shareholder who is not a party to this action. He owns 333⅓ shares of Nutritional.

4. Sworn Statement subscribed by the Secretary-Treasurer of Nutritional in support of motion for summary judgment.

5. Indem.

## I.—STANDING TO SUE UNDER RULE 10B–5

Plaintiff contends that the aforesaid facts triggered a violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 thereunder.

Said Section 10 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange."

"* * *

"(b) To use or employ, *in connection with the purchase or sale of any security* registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors". (Emphasis added).

Under the authority of the above statute, the Securities and Exchange Commission promulgated Rule 10b–5, which provides:

"It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange

"(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *"in connection with the purchase or sale of any security"* (Emphasis added)

In light of the above, the basic issue we must decide is whether plaintiff has a valid cause of action pursuant to said section 10 and Rule 10b–5 and thus whether federal question jurisdiction is present.[6]

In order for the above provisions to be applicable, plaintiff must demonstrate that he was either an actual purchaser or seller of securities as required by the aforementioned statutes. On his pleadings, plaintiff makes no allegations of a purchase or sale of securities by him or by anyone else. Indeed, as indicated in the pre-trial report, the parties stipulated that "plaintiff has had no participation in any purchase or sale of shares of Nutritional since the acquisition of his original shares".

The "purchaser-seller" standing requirement imposed by the "in connection with the purchase or sale of any security" clause of both the statute and rule has been discussed and fully reaffirmed by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), (*Blue Chip*). This basic principle was first enunciated in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952) (*Birnbaum*) more than 20 years prior to *Blue Chip* and has been widely followed by courts considering the matter.[7]

In *Birnbaum* the Court of Appeals for the Second Circuit in holding that the plaintiff therein had no standing to sue in light of his inactivity as a purchaser or seller of securities set forth what became to be known as the "Birnbaum doctrine":

"... [s]ection [10(b)] was *directed solely* at that type of misrepresentation or fraudulent practice usually associated

---

**6.** Although Rule 10b–5 itself does not provide cause of action, civil liability has been generally implied by the federal courts. See, 6 *L. Loss*, Securities Regulation 3871 (1969).

**7.** See, for example: *Haberman v. Murchison*, 468 F.2d 1305, 1311 (2d Cir.1972); *Landy v. FDIC*, 486 F.2d 139, 156–157 (3d Cir.1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Sargent v. Genesco* 492 F.2d 750–763 (5th Cir.1974); *Simmons v. Wolfson*, 428 F.2d 455, 456 (6th Cir.1970), cert. denied, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971), *Mount Clemens Industries, Inc. v. Bell* 464 F.2d 339 (9th Cir.1972), *Jensen v. Voyles*, 393 F.2d 131, 133 (10th Cir.1968).

with the *sale or purchase of securities* rather than at fraudulent mismanagement of corporation affairs, and that X–10–B–5 extended protection only to the defrauded purchaser or seller" (Emphasis added), Id. at 464.

The Supreme Court in *Blue Chip* was called upon to decide whether an offer of securities made by the plaintiffs therein pursuant to an antitrust consent decree conferred the necessary standing to defendants to maintain a private cause of action under provisions of Rule 10b–5 where they did not purchase or sell any of the offered shares.

In concluding that plaintiffs were not entitled to maintain said cause of action because they did not suffer any injury in connection with the sale or purchase of any security as required by the Statute, the Court reasoned the following with respect to the Birnbaum doctrine:

"The longstanding acceptance by the courts, coupled with Congress' failure to reject Birnbaum's reasonable interpretation of the wording of s. 10(b), wording which is directed toward injury suffered 'in connection with the purchase or sale' of securities, argues significantly in favor of acceptance of the Birnbaum Rule by this Court. *Blau v. Lehman*, 368 U.S. 403, 413, 7 L.Ed.2d 403, 82 S.Ct. 451 [456] (1962). *Blue Chip*, supra [421 U.S.] at 733 [95 S.Ct. at 1924].

"[w]e are of the opinion that Birnbaum was rightly decided, and that it bars respondent from maintaining this suit under Rule 10b–5" *Blue Chip*, supra at 731 [95 S.Ct. at 1923].

In addition, the Court in *Blue Chip* straight-forwardly indicated that the class of plaintiff to which plaintiff José H. Rodríguez Cádiz belongs is *barred* from the scope of Rule 10b–5 by the Birnbaum doctrine:

"Three principal classes of potential plaintiffs are presently *barred* by the Birnbaum rule... Third are *shareholders*, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection

with the purchase or sale of securities which violate Rule 10b–5" *Blue Chip*, supra at 737–738, 95 S.Ct. at 1926–1927.

[2] As previously indicated plaintiff argues that he is entitled to Rule 10b–5 protection by reason of the alleged issuance by defendants, of 10,000 additional shares. He further alleges that said issuances diluted his stockholdings in the corporation and hence constituted a Rule 10b–5 violation pursuant to (i) the "forced seller" doctrine and (ii) various court decisions sustaining the proposition that the issuance of shares constitutes a sale for purposes of Rule 10b–5. We conclude that said arguments are unsubstantiated and groundless. We further find that such alleged issuance does not constitute a material fact for purposes of Rule 56 of the Fed.Rules Civ.Proc. (28 U.S.C.A.) because as a matter of law the presence or absence of said issuance does not in any manner alter or modify the outcome of this case.

Concerning the "forced seller" doctrine, plaintiff contends that he was, in fact, a "forced seller" and thus not barred by the Birnbaum doctrine.

The doctrine of the "forced seller" originated in *Vine v. Beneficial Finance Company, Inc.*, 374 F.2d 627 (2d Cir.1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (*Vine*). There it was held that a nontendering shareholder who was "cashed out" by the effectuation of a short-form merger of his corporation with its corporate parent would be considered a participant in a forced sale, and thus entitled to sue under Rule 10b–5.

This doctrine is based upon the following rationale:

"A shareholder should be treated as a seller when the nature of his investment has been fundamentally changed from an interest in a going enterprise into a right solely to a payment of money for his shares" *Houlihan v. Anderson-Stokes, Inc.*, 434 F.Supp. 1330, 1337 (DDC 1977)

In conformity with the above reasoning plaintiff in the instant action is a not a "forced seller" of securities because he has not been by any reason forced or compelled

to sell his stocks in the Corporation as this doctrine presupposes. In *Vine* the plaintiff was forced to be a seller by reason of a short form merger procedure therein involved. No tantamount cause is present here where plaintiff still owns his shares in Nutritional.

Furthermore, plaintiff's argument is clearly erroneous in light of *Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir.1974) (*Sargent*). The court therein held that the dilution of stockholders' equity, as plaintiff here alleges, did not give stockholders standing as "forced sellers" to maintain an action against corporate officers and directors under Rule 10b-5.

> "We also reject plaintiff's second argument that the refinancing plan's issuance of new shares so diluted their position as to give them 10b-5 standing as 'forced sellers'" *Sargent,* supra at 764.

> "Thus, although dilution of equity may be an appropriate measure of damages, *such dilution does not confer standing*" (emphasis added) *Sargent,* supra, at 765.

In conformity with the above reasoning the Court in *Canadian Javelin Ltd. v. Brooks* 462 F.Supp. 190, 196 (6th Cir.1978) (*Javelin*) held that a stockholder who suffered a reduction in the proportional ownership interest in a corporation does not constitute a forced seller.

> "To argue, as Javelin [plaintiff] does, that such a reduction in interest is tantamount to a sale, is to carry the doctrine of 'forced seller' to an extreme". *Javelin,* supra at 196.

Moreover, the fact that plaintiff in the action at bar still owns stocks in Nutritional precludes the application of the "forced seller" doctrine. As states in *Sargent,* supra, at page 765:

> "Similarly, in the instant case the plaintiffs still hold shares in a continuing business operation. In these circumstances it would be sophistic to stretch the forced seller doctrine to allow plaintiffs 10b-5 standing".[8]

As previously indicated plaintiff's second argument to circumvent the Birnbaum doctrine is based upon the principle that an issuance of shares by a corporation constitutes a sale for purposes of Rule 10b-5. In support of this position plaintiff cites the following cases: *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2nd Cir.1968), ("Schoenbaum"), *Ruckle v. Roto Amer. Corp.* 339 F.2d 24 (2nd Cir.1964), ("Ruckle") and *Hooper v. Mountain States Sec. Corp.* 282 F.2d 195 (5th Cir.1960), ("Hooper").

Plaintiff's argument is erroneous. The previously quoted cases substantiate the proposition that an issuance of shares by a corporation constitutes a sale under Rule 10b-5 *only for purposes of giving such issuing corporation standing to sue pursuant to the antifraud provisions* of the Securities Laws. The aforementioned cases do not stand for the proposition that a shareholder of the issuing corporation has standing to bring an individual action as a seller in light of his corporation's standing. It is an undisputed fact that the instant case is not a derivative action. Plaintiff José H. Rodríguez Cádiz is suing as individual shareholder exclusively for his own benefit and as such he must sustain his standing.

Not one of the plaintiffs involved in the above cases was suing on his own behalf. In *Schoenbaum* the Court of Appeals for the Second Circuit had before its consideration a stockholder's derivative action, "This is a stockholder's derivative action on behalf of Banff Oil Ltd.,..." *Schoenbaum,* supra, at 217. In *Ruckle* the Court also dealt with the aforesaid type of action, "a derivative action was instituted on behalf of defendant Roto American Corporation..." *Ruckle,* supra, at 26. Finally, in *Hooper* the plaintiff therein involved was also suing on behalf of the Corporation, "Plaintiff is the trustee of Consolidated American Industries, Inc." *Hooper,* supra, at 199.

---

**8.** In this regard see also, *Wolf v. Frank,* 477 F.2d 467 (5th Cir.1973), *Jeanes v. Henderson,* 703 F.2d 855, 1982–1983 Fed.Sec.L.Rep. (CCH) p. 99, 177 (5th Cir. 1983), *Parness v. Lieblich,* 489 F.Supp. 889 (S.D.N.Y.1980) and *Tully v. Mott Supermarkets,* 540 F.2d 187 (3rd Cir.1976).

Furthermore, see: *City National Bank of Fort Smith, Ark. v. Vanderboom* 422 F.2d 221 (1970), Cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970) and *Shamrock Associates v. Moraga Corp.* 557 F.Supp. 198, 209 (1983). Therefore, with respect to plaintiff's second argument we conclude that it is unmeritorious and that plaintiff does not have standing to bring this suit as an individual shareholder.

## II.—PLAINTIFF'S STOCKS AS SECURITIES

In addition to plaintiff's lack of standing to raise his Rule 10b–5 claim we find that this Court has no subject matter jurisdiction as to this complaint because plaintiff's stocks in Nutritional do not constitute securities within the meaning of the Federal Securities Laws.

■ It is a well settled precept that in order to allege a violation of Section 10 and Rule 10b–5 a transaction involving securities must be present.[9]

And to determine whether a "security" exists the applicable test is the so called "Howey test".

This test was elaborated in the case of *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) to be utilized in ascertaining whether an investment contract, and thereby a security exists. See, *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) and *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

■ According to the "Howey Test" a security will be deemed to exist if the following three elements are present in the scheme or interest in question:

(1) Contract or scheme whereby a person invests his money in a common enterprise, and

(2) is led to expect profits

(3) *Solely* from the efforts of the promoters or third party.

■ Pursuant to this test it is clear that plaintiff's shares in Nutritional were not "securities" within the meaning of the federal securities laws. The attribute of a security is that it represents an investment in a venture which derives profits from the entrepreneurial or managerial efforts of others. (See element 3 above). In the instant action said element is not present; he was indeed a very active employee of Nutritional. Moreover, plaintiff in his complaint asserts that he devoted great efforts for the success of "his business".[10]

Therefore, on the basis of the above we resolve that plaintiff herein invested in the corporation as a joint venturer relying, at least partially, on his own efforts and thus his stocks in said corporation do not constitute securities for purposes of Rule 10b–5.[11]

### UTILIZATION OF INTERSTATE COMMERCE MEANS

[6, 7] With respect to the application of section 10 and Rule 10b–5, the utilization of the mails or of "a means or instrumentality of interstate commerce" or of a "facility of a national securities exchange" in connection with the purpose or sale of a security is necessary. *Ford v. Cannon*, 413 F.Supp. 1393 (M.D.D.C.1976). In this regard plaintiff has failed to indicate specifically any such use. General references to use of said means of interstate commerce which are unrelated to the alleged defendants' misconduct cannot fulfill this requirement. *Boone v. Baugh*, 308 F.2d 711 (8th Cir.1962).

### CONCLUSION

It is our conclusion, in view of all the legal aspects we have discussed, that even considering as true the facts of the com-

---

**9.** "It is obvious that there must be a security involved in the transaction in order for Section 10(b) and Rule 10b–5 to apply" *R. Jennings & H. Marsh,* Securities Regulation, (5th ed. 1981, p. 810).

**10.** Refer to paragraph 16 of the Amended Complaint of March 23, 1981.

**11.** See courts' reasoning in *Christy, et al. v. Cambron, et al.* 710 F.2d 669 (10th Cir.1983), *Frazier v. Manson* 651 F.2d 1078 (5th Cir.1981).

plaint this case must be summarily dismissed for lack of subject matter jurisdiction.

Plaintiff has clearly failed to overcome the obstacles of *Blue Chip* and has not established that his shares in Nutritional constitute "securities" as previously indicated or the use of means of interstate commerce in connection with the purchase or sale of securities nor does he satisfy other necessary elements of a Rule 10b–5 cause of action.[12]

Moreover, the instant claim is not cognizable under Rule 10b–5, *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), *Superintendent of Insurance v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971).

For the above stated reasons, Defendants' Motion for Summary Judgment for want of federal jurisdiction is hereby GRANTED and the action is dismissed as to all defendants.

IT IS SO ORDERED.

---

**12.** Plaintiff has made no reference as to defendants' arguments related to the lack of scienter, materiality, reliance or causation which are necessary elements of a Rule 10b–5 action. In this regard see, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (Scienter), *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), (Materiality), *List v. Fashion Park, Inc.,* 340 F.2d 457 (2d Cir.1965), (Reliance), and *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (Causation).