**Dr. Victor SANCHEZ CARDONA, Plaintiff,**

v.

**CORPORATE PLANNERS, INC., et al., Defendants.**

Civ. No. 89–0336(SEC).

United States District Court, D. Puerto Rico.

Aug. 17, 1995.

Victor P. Miranda–Corrada, Hato Rey, PR, Luis N. Blanco–Matos, San Juan, PR, for plaintiff.

Donato Rivera-de-Jesús, San Juan, PR, David Loópez–Pumarejo, San Juan, PR, Rafael Escalera–Rodríguez, Lasa, Escalera & Reichard, San Juan, PR, for defendants.

**OPINION AND ORDER**

CASELLAS, District Judge.

Currently before the Court are defendants' motions for summary judgment (Docket Nos. 345 and 347), plaintiff's opposition (Docket

No. 346), and codefendants Dr. and Mrs. Héctor Pumarejo's reply (Docket No. 356). After close perscrutation of the record, including the aforementioned motions, all supporting documents, and plaintiff's third amended complaint, and after a review of the pertinent caselaw on securities fraud and the current standard for summary judgment, the Court hereby rules that defendants' motions for summary judgment should be **granted** and the case **dismissed.** The Court's reasoning in reaching this decision will be explained below.

*The Motions*

In their motions, defendants attack plaintiff's ground for federal question jurisdiction under section 32 of the Securities Act of 1933, 15 U.S.C. 77v, section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, which deem unlawful the use of deceptive or misleading statements in connection with the purchase or sale of a security. The gist of defendants' argument is that since plaintiff's case does not meet the requirements for a "securities fraud action" under the aforementioned statutes, there is no federal question jurisdiction on which the Court can pin its exercise of supplemental jurisdiction over the state law claims; therefore, the case should be dismissed. In addition, codefendants Dr. and Mrs. López Pumarejo present numerous excerpts from plaintiff's deposition to support their contention that summary judgment is appropriate because there are no genuine issues of material fact to be tried.

In his opposition to the López Pumarejo summary judgment motion, plaintiff limits himself to attacking codefendants' construction of the transaction, objecting to the alleged application of standards anent "investment contracts." Plaintiff's argument is merely that the transaction he entered into with defendants was a stock purchase, and as such, falls squarely into the realm of protected activities under Rule 10b–5. Plaintiff also attaches undue importance to the fact that a previous challenge to his federal cause of action was struck down by the Court. That challenge—brought via motion to dismiss—failed under the standard of review for motions to dismiss, which is markedly different from that which applies to summary judgment motions. See *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962 (1st Cir.1993). While plaintiff's allegations must be examined under the light most favorable to him for purposes of a motion to dismiss, no such consideration is due while entertaining a summary judgment. Instead, the Court is free to examine all the facts in evidence, for as Rule 56(c) of the Federal Rules of Civil Procedure states, the Court shall render its judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In order to defeat a properly supported motion for summary judgment, a non-movant must present his own evidence to demonstrate that genuine issues of material fact exist which warrant the celebration of a trial. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As Rule 56 states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

In this case, plaintiff has not contested defendants' version of the facts—supported by excerpts from plaintiff's own testimony in his deposition—nor attempted to persuade the Court that there are genuine issues of material fact that preclude the granting of summary judgment. Plaintiff relies solely on his pleadings and his interpretation of the law. As we have seen, mere reliance on the pleadings is insufficient to defeat a summary judgment; plaintiff's construction of the law is likewise insufficient to persuade the Court

that he has an actionable cause of action for securities fraud.

*The Law*

██ Plaintiff brings suit in federal court under the aegis of federal question jurisdiction, based on violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and Rule 10b–5, 17 C.F.R. 240.10b–5. Section 10(b) states that

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> (b) to employ, in connection with the purchase or sale of any security registered on a national securities exchange or any securities not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary and appropriate in the public interest or for the protection of investors.

In order to implement this section, the Commission promulgated Rule 10b–5, which deals in more detail with the "manipulative and deceptive devices" banned in the sale and purchase of securities. The rule reads:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the lift of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> **in connection with the purchase or sale of any security.** (Emphasis added.)

In order to successfully allege a violation of this rule and the corresponding statutory provision, the transaction in question must involve a "security." *Rodríguez Cádiz v. Mercado Jiménez,* 579 F.Supp. 1176, 1181 (D.P.R.1983). This term is defined in Section 2(1) of the 1933 Securities Act, 15 U.S.C. 77(b)(1) as

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Notwithstanding the broadness of the statutory definition, courts must determine on a case-by-case basis and in light of the particular facts averred, whether a "security" exists, since "[a] determination that a particular transaction may fall within the literal language of the securities statutes only begins the analysis, it does not end it." *GBJ Corporation v. Sequa Corporation,* 804 F.Supp. 564, 568 (S.D.N.Y.1992). The congressional purpose in defining the term 'security' was not to irrefutably set its meaning, but rather to define it "in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security." H.R.Rep. No. 85, 73rd Congress, 1st Session, 11 (1933). However, the

> reach of the Act does not stop with the obvious and the commonplace. Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as a matter of fact that they were widely offered or dealt in under the terms or courses of dealing which established their character in commerce as "investment contracts," or as "any interest or instrument commonly known as a 'security.' " *SEC v. C.M. Joiner Leasing Corporation,* 320 U.S. 344, 351, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943).

Furthermore, under these statutes, a security is defined not by its form or nomenclature, but by its substance; the economic reality of the transaction is the hinge on which the analysis turns. See *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975). As Judge Friendly put in in *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984), cert. denied, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984):

> The purpose of section 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

Thus, the congressional intent that must guide judicial interpretation of the federal securities statutes is the desire to protect innocent third parties from deception in the investment of their money on schemes over which they have little or no control.

 Having explained the pertinent statutory and caselaw regarding the requirement that a "security" be involved before jurisdiction under the securities statutes is invoked, we now turn to an examination of the facts in the case at hand, to determine whether the transaction at the center of this lawsuit complies with the above stated requirement. Although plaintiff, in his opposition, argues that his bald representation of the transaction as a "stock purchase" triggers jurisdiction under the securities statutes, the foregoing exposition of the law clearly shows otherwise. Indeed, the facts in this case, as properly presented by defendants in their motions for summary judgment (backed up by plaintiff's own testimony during deposition and uncontroverted by other evidence), do not satisfy the threshold requirement regarding the existence of a security.

As the record shows, plaintiff approached defendants to create a joint venture to develop and market plaintiff's software and split the profits 50/50. The software would be created and marketed through a corporation run by plaintiff and whose ownership would also be 50/50. The agreement allegedly entered into between plaintiff and defendants does not hinge upon the issuance of the new corporation's stock; the issuance of the stock would have been merely a consequence of the agreement, but not the agreement itself. The transaction in question is more akin to a joint venture or a partnership agreement than to a stock purchase, as plaintiff characterized it.

Furthermore, an analysis of the pertinent caselaw reveals that this kind of agreement cannot be deemed an "investment contract"—and thus, a "security"—for purposes of the federal securities statutes. The Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1947) defined an investment contract as

> a contract, transaction or scheme whereby a person invests his money and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

While this definition "embodies a flexible rather than a static principle," it is not flexible enough to encompass the transaction in this case, since its purpose is "to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 299, 66 S.Ct. at 1103. Indeed, we find persuasive the decision in *Rodríguez Cádiz*, supra, where the court applied the Howey test and found that, since plaintiff was an active employee of the defendant and had asserted in his complaint "that he devoted great efforts to the success of 'his business,'" the plaintiff had no standing to bring a Rule 10b–5 action.

In the present case, as in *Rodríguez Cádiz*, the third prong of the Howey test is not fulfilled because the profits depend upon plaintiff's efforts. In fact, defendants cite various occasions in which plaintiff testified at his deposition that pursuant to an agreement between plaintiff and the defendants,

he would act as "partner in charge" of the venture, whereby he would supervise "[e]verything, everything. How are things being done to check on the quality of the work being done, make sure that the contract was a success and myself making sure that COR-PLAN SOFTWARE had two million dollar profits at the end of that project." López Pumarejo motion at 20, citing plaintiff's deposition at 94, lines 10–18. By plaintiff's own admission, the success of the venture depended very much on him, on his technical knowledge and managerial expertise.

The fact that the transaction at the heart of this lawsuit is not related to a "security" is enough to defeat federal question jurisdiction in this case. However, there is yet another ground on which plaintiff's federal case fails, one that strikes at the very core of a Rule 10b–5 cause of action. As explained in *Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618, 623 (1st Cir.1988) and in *Estate of Soler v. Rodríguez*, 847 F.Supp. 236, 239 (D.P.R.1994), in order to state a Rule 10b–5 cause of action, "a plaintiff must plead that the defendant, acting with scienter, made a false material representation or failed to disclose material information, in connection with the purchase or sale of a security, and that plaintiffs justifiably relied upon the representation or omission, resulting in economic loss." Paramount is, of course, the requirement that the deceit or fraud be made "in connection with" the sale or purchase of any security. It is this "in connection with" requirement that strikes another death blow to plaintiff's federal case.

■ While, as plaintiff rightly points out, the term "security" is intended to encompass a wide variety of instruments, the statute is not meant to cover every possible fraud tangentially related to a security. As the Supreme Court stated in *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982), "Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud." Only fraudulent acts related to the sale and purchase of securities give rise to a cause of action under the federal securities laws. "To satisfy the 'in connection with' requirement plaintiff may not allege fraudulent acts which merely happened to involve commodity futures in some way. The 'in connection with' requirement mandates that the alleged fraud concern the fundamental nature of the [security]: namely, the characteristics and attributes that would induce an investor to buy or sell the particular [security]." *Kearney v. Prudential–Bache Securities, Inc.*, 701 F.Supp. 416, 424 (S.D.N.Y. 1988), cited in *Estate of Soler*, 847 F.Supp. at 239–40.

A careful reading of plaintiff's third amended complaint shows that none of the alleged fraudulent misrepresentations touch upon the intrinsic nature and characteristics of the stock itself. For example, plaintiff alleges that defendants misled him about the very existence of CORPSOFT by promoting the corporation and charging expenses to it, in order to induce plaintiff to share his expertise. Plaintiff also alleges that defendants have concealed information about CORPSOFT's operations, as well as excluded him from contract negotiations regarding the sale of software he had designed. None of these actions have anything to do with the value, nature, or characteristics of a security. Indeed, they are all related to the real transaction subject of the lawsuit: the joint venture to develop and market software created by plaintiff. In fact, were plaintiff to prove that he was induced to share his knowledge and work product through misleading statements or that he did so because of promises made by defendants, plaintiff could very well have an action for breach of contract or ordinary fraud. What he does not—and under the facts of this case, cannot—have is an actionable claim for violation of the federal securities antifraud provisions.[1]

---

1. Plaintiff's reliance on *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 (2d Cir. 1985), is misplaced. While plaintiff is correct in stating that the court in *Yoder* found that the Howey test is irrelevant where there has been a stock purchase, the case is inapposite, since we found that there was no stock purchase in the present case. After such a finding, it is indeed appropriate to apply the Howey test to determine if an investment contract existed under the federal securities statutes. It is also important to note that the *Yoder* court's holding that there had been a stock purchase was made in the context of the facts of the case, to wit: the plaintiff in

We need go no further in our analysis of plaintiff's ill-fated federal cause of action. The remaining causes of action were brought under the laws of the Commonwealth of Puerto Rico. The Court hereby exercises its discretion and dismisses without prejudice the supplemental state claims. These can be properly brought before the same state court which is already entertaining a civil action based on the same facts that gave birth to this federal case. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966); *Newman v. Burgin*, 930 F.2d 955, 963–64 (1st Cir.1991).

*Disposition*

For the above stated reasons, the Court hereby grants defendants' motions for summary judgment. The federal claim based on Rule 10b–5 is dismissed with prejudice; all the other state claims are dismissed without prejudice to plaintiff's ability to bring them before a state forum.

IT IS SO ORDERED.

that case had sold her business in exchange for a three year employment contract, royalties from the sale of publications she wrote, and stock in the buyer's corporation. The buyer in that case had misrepresented its financial worth, thus affecting the perceived value of the stock. As can be seen from this summary, the facts in the present case are markedly different and clearly distinguishable.