## CANADIAN JAVELIN LIMITED, Plaintiff,

v.

### David A. BROOKS, R. A. Mitchell, David Strolovitch, Individually and as members of "Canadian Javelin Shareholders' Protective Committee", William M. Wismer, Anthony G. Ayre, Cecil W. Wylie, Frank C. Shirriff, Harold W. M. Smith and John Shemilt, Defendants.

#### No. 77 Civ. 5162.

United States District Court, S. D. New York.

Dec. 1, 1978.

---

Reginald Leo Duff, Carro, Spanbock, Londin, Rodman & Fass, Irving L. Golomb, Diamond & Golomb, P. C., New York City, for plaintiff.

Michael Lillie, Susan Belgard, Shearman & Sterling, New York City, for defendants Wismer, Ayre, Wylie, Shirriff, Smith and Shemilt.

David A. Brooks, pro se.

R. A. Mitchell, pro se.

David Strolovitch, pro se.

## OPINION

SWEET, District Judge.

Plaintiff Canadian Javelin Limited ("Javelin"). is a Canadian corporation registered with the Securities and Exchange Commission (the "SEC") pursuant to Section 12 of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. § 78*l*. Javelin's shares have been traded on the American Stock Exchange, but are currently under suspension. Javelin commenced this action by filing a five-count complaint against nine Canadian citizens individually and against a shareholders' committee allegedly formed by three of them. Javelin has alleged that the defendants violated provisions of the Exchange Act and the Rules promulgated thereunder, and has moved for preliminary injunctive relief. Plaintiff's motion is granted in part and denied in part.

### Statement of Facts

Defendants Brooks, Mitchell and Strolovitch (the "Brooks Defendants") are the shareholders of Javelin who have allegedly organized a "Protective Committee" (the "Committee") which has twice mailed material to Javelin's shareholders. The material which was mailed is unfavorable to Javelin's present management and to John Doyle, Javelin's principal shareholder. One of the mailings included a request for funds to support the work of the Committee. In the mailing, the Committee's purpose was described as "eliminating the influence of John Doyle with the removal of present management."

Defendants Wismer, Ayre, Wylie, Shirriff, Smith and Shemilt (the "Wismer Defendants") are former directors of Javelin who constitute the majorities of the Boards of Directors of Bison Petroleum & Minerals Limited ("Bison") and Dominion Jubilee Corporation Limited ("Jubilee"), both of which are Canadian corporations. Javelin alleges that its controlling interest in Bison and Jubilee was eliminated by an exchange of stock between Bison and Jubilee in February, 1977.[1] The validity of the exchange of stock under Canadian Law is the subject of a suit brought by Javelin in Canada. The Supreme Court of Ontario has temporarily restrained the voting of shares in both companies. After the exchange, Bison did not provide financial statements on a timely basis to Javelin. Javelin asserts that this failure has made it impossible for Javelin to file reports required by the SEC.

Count I of the complaint seeks an injunction against future violations of SEC Rules 14a–3 and 14a–6 by the Brooks Defendants. Javelin claims that the two mailings were in fact solicitations under the Proxy Rules. Thus, they should have contained information required by Rule 14a–3 and should have been filed with the SEC pursuant to Rule 14a–6.

Count II alleges that the Brooks Defendants and the Committee are "fronts" for the Wismer Defendants and seeks to enjoin the Wismer Defendants and "those acting in concert, conspiracy or participation with them" from violations of Section 14(a) of the Exchange Act and the regulations issued thereunder.

1. The Boards of Directors of Bison and Jubilee, agreed to an exchange of stock between the two corporations on February 21, 1977. Bison gave Jubilee 3.3 million shares of Bison stock, in return for 2.1 million shares of Jubilee stock. Javelin's controlling interests in Bison and Jubilee were eliminated as a result. After the exchange Javelin had 34.5% of Bison's stock, compared to 43.7% owned by Jubilee, and Javelin had 23.9% of Jubilee, compared to 28.1% owned by Bison. The defendants, from their positions as Directors of Bison and Jubilee, thus exercise the controlling interest in each corporation.

Count III charges the Wismer Defendants and those acting in concert with them with violations of Rule 14a–9 on grounds that the alleged solicitations misrepresented and omitted material facts. Plaintiff asks that all defendants be enjoined from future violations of Rule 14a–9.

Count IV is predicated on the exchange of stock between Bison and Jubilee. Plaintiff asserts that the exchange was fraudulent, in violation of Section 10(b) of the Exchange Act and Rule 10b–5. Plaintiff seeks to enjoin the Wismer Defendants and those acting in concert with them from future violations of Section 10(b) and Rule 10b–5. Additionally plaintiff seeks to enjoin defendants from voting the shares of Bison and Jubilee so exchanged, and to vote the shares they own or control in favor of cancelling the exchange. Finally, plaintiff seeks to have this court set aside or "sterilize" the exchange of stock.

Count V accuses defendant Wismer of violating Section 20(c) of the Exchange Act, and accuses the other Wismer Defendants of aiding and abetting his violation. Plaintiff asserts that Wismer, a stockholder of Javelin, has refused, or caused Bison to refuse, to provide Javelin with financial information about Bison which Javelin needs to file its consolidated financial reports required by the SEC. Javelin seeks to enjoin defendants from future violations of Section 20(c) of the Exchange Act, and to require defendant to provide Javelin with such information.

Additionally, in its complaint, plaintiff demands that, pursuant to Counts I, II, and III, defendants be required to return all monetary contributions made to the Committee in response to the allegedly illegal solicitations.

Wismer has submitted an answering affidavit in response to Javelin's motion, on behalf of himself and the other Wismer Defendants. Additionally, the Wismer Defendants have submitted a memorandum of law opposing Javelin's motion for a preliminary injunction. In his affidavit Wismer denies any involvement with the Committee, but acknowledges that he saw a draft of one of the alleged solicitations. Wismer describes Javelin's complaint as "frivolous" and has asked to be awarded costs and attorneys' fees. Brooks has submitted an affidavit denying the involvement of any of the Wismer Defendants in any of the activities of the Committee, and acknowledging that he is the organizer of the Committee.

Defendant Strolovitch has submitted an affidavit stating that he will not "participate in any proxy solicitations contrary to the laws of the Securities Exchange Act of 1934 and the Rules and Regulations promulgated by the Securities and Exchange Commission thereunder."

Defendant Mitchell has submitted an affidavit stating that he reviewed Javelin's financial statements at Brooks' request, that he did not prepare or review, in detail, the alleged solicitation, and that he has not communicated with Javelin's shareholders in the past, nor will he do so in the future.

### The Alleged Proxy Rules Violations

Defendants do not deny that the Committee twice mailed material to Javelin's shareholders, substantially in the form submitted by plaintiff as exhibits to its complaint. Thus, the first question to be answered is whether such material is governed by Section 14(a) of the Exchange Act and the Proxy Rules. This court concludes that the material is so governed. Two mailings were sent by the Committee on or about September 20, 1977, and October 10, 1977. The first mailing consisted of two newspaper articles, generally unfavorable to John Doyle, describing Javelin's affairs, and a letter addressed "To the shareholders of Canadian Javelin." The letter was written under the letterhead of the "Canadian Javelin Shareholders' Protective Committee." The letter itself described the "machinations and contrivances of John C. Doyle," and various legal actions involving Canadian and American regulatory authorities, Doyle and Javelin. The letter ended with an appeal for funds to support the Committee, whose purpose was described in the letter as "eliminating the influence of John Doyle with the removal of present management."

The second mailing consisted of copies of newspaper articles entitled "John Doyle: Comfy in Panama," and "John C. Doyle, the fugitive financier enjoying his $20 million in Panama."

The objective of the mailings was to further the Committee's self-described purpose, viz. the removal of present management.

SEC Rule 14a–2 provides that the Proxy Rules apply to every solicitation of a proxy with respect to a security registered under Section 12 of the Exchange Act unless the solicitation is specifically exempted. None of the specified exemptions apply to this case. The terms "proxy" and "solicitation" are defined in Rule 14a–1:

> *Proxy.* The term "proxy" includes every proxy, consent or authorization within the meaning of Section 14(a) of the Act
>
> . . .
>
> *Solicitation.* The terms "solicit" and "solicitation" include—
>
> (1) any request for a proxy, whether or not accompanied by or included in the form of a proxy;
>
> (2) any request to execute or not to execute, or to revoke, a proxy; or
>
> (3) the furnishing of a form of proxy or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy.

The court concludes that the mailings conducted by the Committee were "communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation" of proxies against the interests of the present management of Javelin, since the announced purpose of the Committee was to oust that management.[2]

**2.** *SEC v. Topping,* 85 F.Supp. 63, 64 (SDNY 1949), (stating that "any writings which are part of a continuous plan ending in solicitation and which prepare the way for its success" are within the scope of the Proxy Rules); *see SEC v. Okin,* 132 F.2d 784, 786 (2d Cir. 1943) and *Halsted v. SEC,* 86 U.S.App.D.C. 352, 354–355, 182 F.2d 660, 662–3 (1950), *cert. denied,* 340 U.S. 834, 71 S.Ct. 68, 95 L.Ed. 612 (wherein the courts construed the proxy solicitation requirements of the Public Utilities Holding Act to

The standard to be met in granting a preliminary injunction was set forth in *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973):

> The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief. [Emphasis in original.]

Javelin has alleged that it is powerless to counteract defendants' injurious remarks because it cannot distribute proxy material to counteract defendants' charges without the prior approval of "Special Compliance Council" (appointed pursuant to a 1974 Consent Decree agreed to by Javelin at the behest of the SEC). Thus the balance of hardships tips toward Javelin. Defendants counter there is no precedent for preliminarily enjoining proxy solicitation. Notwithstanding, defendants and those acting in concert with them are hereby enjoined from violating the filing and informational requirements of Section 14(a) of the Exchange Act and the Rules promulgated thereunder, in any future mailings to Javelin's shareholders. Defendants are hereby ordered to return to the contributors the funds collected pursuant to the two solicitations described.

### *The Section 10(b) Claim*

Securities and Exchange Commission Rule 10b–5 provides:[3]

govern solicitations that were not in proxy form); *see also Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 796 (8th Cir. 1967) (applying the requirements of the Proxy Rules to a solicitation for membership in a voting trust).

**3.** Rule 10b–5 was promulgated pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the *purchase or sale of any security.* [Emphasis added.]

In *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, the Court of Appeals for the Second Circuit held that the plaintiff class for purposes of a private damage action under Section 10(b) of the Exchange Act and Rule 10b–5 was limited to actual purchasers and sellers of securities.

In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court affirmed the principle of *Birnbaum* :

> Three principal classes of potential plaintiffs are presently barred by the *Birnbaum* rule. First are potential purchasers of shares either in a new offering or on the Nation's post-distribution trading markets, who allege that they decided not to purchase because of an unduly gloomy representation or the omission of favorable material which made the issuer appear to be a less favorable investment vehicle than it actually was. Second are actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material. *Third are shareholders,* creditors, and perhaps others related to an issuer *who suffered a loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b–5. Blue Chip*, 421 U.S. at 737–8, 95 S.Ct. at 1926. [Emphasis added.]

■ Javelin therefore must overcome the logical conclusion that, as a member of the third class of potential plaintiffs discussed in *Blue Chip*, its cause of action under Rule 10b–5 cannot be maintained. This Javelin has been unable to do.

Javelin argues that it is, in fact, a "forced seller" and thus not barred by the *Birnbaum* rule. The doctrine of the "forced seller" originated in *Vine v. Beneficial Finance Company, Inc.*, 374 F.2d 627 (2d Cir. 1967), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460. There it was held that a minority shareholder who was "cashed out" by the effectuation of a short-form merger of his corporation with its corporate parent was a "forced seller" and therefore entitled to sue under Rule 10b–5. Javelin has cited recent authority to support its view that the doctrine has survived *Blue Chip*, and that the standard to be applied is that:

> A shareholder should be treated as a seller when the nature of his investment has been fundamentally changed from an interest in a going enterprise into a right solely to a payment of money for his shares. (*Houlihan v. Anderson-Stokes, Inc.*, 434 F.Supp. 1330, 1337 (DDC 1977).

Javelin argues that the exchange of securities between Bison and Jubilee deprived it of its controlling interest in both companies and hence, "satisfies the test of a fundamental change in the nature of its investment and expectations."

---

the mails, or of any facility of any national securities exchange—

.    .    .    .    .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

In *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977), the Court of Appeals for the Second Circuit stated:

> Before changes in the rights of a security holder can qualify as the "purchase" of a new security under Section 10(b) and Rule 10b–5, there must be such significant change in the nature of the investment or in the investment risks as to amount to a new investment.

Although in *Abrahamson*, the plaintiffs' Rule 10b–5 claim was dismissed, in part, because plaintiffs were clearly within the second class barred by the *Birnbaum* rule, it was also dismissed because there was found to be no underlying purchase and sale of new securities. Applying the *Abrahamson* test to the facts in the present case, and examining the diminution in value to plaintiff, the question becomes: has there been such a significant change in the nature of Javelin's investment or investment risks as to amount to a new investment? If not, Javelin cannot be a purchaser or seller for purposes of the *Birnbaum* rule, and its cause of action must fail.

Javelin's reliance on *Houlihan, supra*, invites the application of that standard. Here Javelin's interest has not been changed "into a right solely to a payment of money for (its) shares. Certainly, Javelin's proportional ownership of Bison and Jubilee has been reduced. Nonetheless it retains a 34.5% interest in Bison and a 23.9% interest in Jubilee. To argue, as Javelin does, that such a reduction in interest is tantamount to a sale, is to carry the doctrine of "forced seller" to an extreme.

In *Tully v. Mott Supermarkets*, 337 F.Supp. 834 (D.N.J.1972), the court allowed a shareholder to sue individually when the corporation's board of directors sold to themselves and others a block of Treasury stock. The effect of the sale was to deprive plaintiffs of their controlling position. Defendants argued that *Birnbaum* raised an insurmountable bar to plaintiffs' action, since plaintiffs were neither buyers or sellers with respect to the stock purchase in question. The district court attacked the *Birnbaum* rule and granted plaintiffs a preliminary injunction. In 1976, the Court of Appeals for the Third Circuit reversed.

In *Tully v. Mott Supermarkets*, 540 F.2d 187 (3d Cir. 1976), decided after *Blue Chip*, plaintiffs argued that their Rule 10b–5 claims were based on, *inter alia*, the conspiracy of defendants to deprive plaintiffs of voting control, and on their inducement of the corporation to sell its stock to defendants at a fraudulently low price. The Court of Appeals for the Third Circuit stated:

> The allegations are based, not on injuries suffered as a result of plaintiffs' actual stock purchase, but rather on injuries caused by [the corporation's] refusal to sell to plaintiffs and by its sale to defendants. The gravamen of their complaint, therefore, is that they were "deprived" purchasers. We do not believe such allegations are sufficient to confer standing on plaintiffs in the absence of any showing of fraud in connection with their own purchase of securities. 540 F.2d at 194.

Like the plaintiffs in *Tully*, Javelin has failed to overcome the obstacle of *Blue Chip*, which bars shareholders "who suffered a loss in the value of their investment due to corporate or insider activities", from maintaining an action under Section 10(b) and Rule 10b–5.

Moreover, even if Javelin were not barred from maintaining this claim under the *Birnbaum* rule affirmed in *Blue Chip*, there is serious doubt whether it has stated a cause of action under Section 10(b) of the Exchange Act.

A private right of action should not be implied under Section 10(b) where it is "unnecessary to ensure the fulfillment of Congress' purposes." *Piper v. Chris-Craft*, 430 U.S. 1, 41, 97 S.Ct. 926, 949, 51 L.Ed.2d 124 (1977). The fundamental purpose of the Exchange Act is to implement a "philosophy of full disclosure." *Santa Fe Industries v. Green*, 430 U.S. 462, 478, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Courts should be reluctant to imply a cause of action to serve a subsidiary purpose of the legislation. *Id.*

In *Santa Fe* the Court held that, absent material representation or a failure to disclose material facts, the breach of fiduciary duty in a corporate merger does not give rise to a private cause of action under Section 10(b).

No doubt Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices. But we do not think it . . . meant to bring within the scope of Section 10(b) instances of corporate mismanagement . . . the essence [of which] is that shareholders were treated unfairly by a fiduciary. 430 U.S. at 477, 97 S.Ct. at 1302.

The Court stated that once full and fair disclosure had taken place "the fairness of the terms of the transaction is at most a tangential concern of the statute." 430 U.S at 478, 97 S.Ct. at 1303.

Furthermore, since the cause of action was one traditionally relegated to state law, to allow the action to proceed would have opened the federal courts to an expanded class of plaintiffs and "vexatious litigation" and interfered with state corporation law. Federal fiduciary standards should be supplied by legislation, not by judicial extensions of Section 10(b) and Rule 10b-5. *Santa Fe Industries*, at 479, 97 S.Ct. 1292.[4]

■ Here the basis of Javelin's 10(b) claim is that the exchange of stock between Bison and Jubilee abrogated Javelin's rights as the controlling shareholder of each corporation. There is no allegation that either corporation possessed less than full information about the other. Neither was misled by artificial market activity in the other's shares. Javelin's claim in essence is that the Boards of Directors of Bison and Jubilee violated their duties to Javelin, a shareholder, when they arranged the exchange. It is an allegation of fiduciary breach, and is being litigated in the Canadian courts, where it belongs.

Javelin's motion for a preliminary injunction pursuant to Section 10(b) of the Exchange Act is denied.

*The Section 20(c) Claim*

■ Javelin's last cause of action is based on Section 20(c) of the Exchange Act.[5] Whether or not a private cause of action under that section should be judicially implied has not heretofore been decided. Presumably a review of the legislative purpose behind the section, and of its place in the framework of the Exchange Act, would lead to a determination of whether a private right of action is necessarily implied to ensure the fulfillment of Congress' purpose. *Santa Fe*, 430 U.S. at 477, 97 S.Ct. 1292; *Piper, supra*, 430 U.S. at 24-5, 97 S.Ct. 926. However, such a determination is not appropriate here. Bison's shares are not traded on any exchange. Bison is not registered with the SEC under the Exchange Act. Its viability as a corporation is primarily of concern to Canadian authorities, and its rights and duties are primarily determined by Canadian law. Bison has agreed to provide financial statements to Javelin, more quickly than it does now, so that Javelin may timely file its documents with the SEC, on the condition that Javelin pay for their accelerated preparation. Javelin has not accepted the other, choosing rather to move in the Southern District of New York for a preliminary mandatory injunction. This motion, too, must fail.

Javelin's dispute with Bison is for control of that former subsidiary. Its claim under Section 20(c) of the Exchange Act is a hybrid manifestation of that claim. If Javelin must have the statements, it can accept Bison's offer. When the underlying

4. The United States Court of Appeals for the Second Circuit applied the principles of *Santa Fe* in *Cole v. Schenley Industries, Inc.*, 563 F.2d 35, 43-4 (2d Cir. 1977).

5. Section 20(c) of the Exchange Act provides:
It shall be unlawful for any director or officer of, or any owner of any securities issued by, any issuer required to file any document, report, or information under this chapter or any rule or regulation thereunder without just cause to hinder, delay, or obstruct the making or filing of any such document, report, or information. (15 U.S.C. § 78t(c)).

dispute is resolved in the Canadian courts, the two companies can settle their affairs.

There is no basis for relieving Javelin of the requirement to show the usual prerequisites of injunctive relief. *Rondeau v. Mosinee*, 422 U.S. 49, 63, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). There being no prospect of irreparable harm, Javelin's motion for a preliminary injunction pursuant to Section 20(c) of the Exchange Act is denied.

Defendants' request for costs and attorneys' fees is denied.

IT IS SO ORDERED.