ONBANCORP, INC., Plaintiff,

v.

Seymour HOLTZMAN, Defendant.

No. 96–CV–1700 (RSP/DNH).

United States District Court,
N.D. New York.

March 10, 1997.

Bond, Schoeneck & King, LLP, Syracuse, NY (George H. Lowe, Edward R. Conan, of counsel), Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York, NY (Jay B. Kasner, of counsel), for Plaintiff.

Elliott Reihner Siedzikowski & Egan, P.C., Scranton, PA (George A. Reihner, Mark J. Conway, of counsel), Carroll, Carroll, Davidson, Franklin & Young, Syracuse, NY (John Benjamin Carroll, of counsel), Richard L. Huffsmith, Wilkes–Barre, PA, for Defendant.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

ONBANCorp, Inc. ("ONBANC" or "the bank"), a bank holding company, has accused Seymour Holtzman, a substantial shareholder, of improper proxy solicitation in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a). In the motion presently before me, ONBANC requests a preliminary injunction ordering Holtzman to (1) make corrective disclosures concerning statements that he made in a press release and cartoons, and (2) refrain from violating the filing and informational requirements of the Exchange Act in the future. ONBANC claims that the press release and cartoons are materially false and misleading proxy solicitations. Because ONBANC has not shown that any

materials Holtzman has issued or could issue between now and trial on the merits likely would cause the bank or its shareholders irreparable injury, I deny its application.

## BACKGROUND

### I. Factual Background

ONBANC's charges concern alleged solicitations preliminary to the corporation's 1997 shareholders' meeting but require an understanding of the parties' past dealings, especially those related to ONBANC's 1996 shareholders' meeting.

On November 22, 1995, ONBANC received eight shareholder proposals for its 1996 annual meeting. The proposals ranged from a request that the board of directors sell the bank to measures altering voting requirements. Berger Decl., Dkt. No. 35, ¶ 21, Exs. 20–27; Garcia Decl., Dkt. No. 46, ¶ 12. Seven of the eight proposals came from Holtzman, Holtzman's relatives, or persons or entities having close ties to Holtzman. *Id.* However, Berkshire Capital Partners ("Berkshire"), a firm without apparent ties to Holtzman, submitted the eighth proposal, which also called for a sale of ONBANC. Berger Decl. ¶ 21; Garcia Decl. ¶ 12(2).

By letter dated January 4, 1996, ONBANC's counsel informed the United States Securities and Exchange Commission ("SEC") that the bank proposed to omit all eight shareholder proposals from its proxy statement and requested that the SEC not take enforcement action. Garcia Decl. ¶ 15, Ex. C at 3, 16. With the exception of Berkshire, all of the proposal proponents submitted a joint response that included revised versions of several of the proposals. *Id.* ¶ 18, Ex. D. Berkshire also opposed omission of its proposal. *Id.* Ex. E. The SEC rejected most of ONBANC's arguments based in part on the proponents' offer to modify their proposals. *Id.* Ex. F. However, the SEC did indicate that it would not take enforcement action with respect to proposals made by Seymour and Marc Holtzman. *Id.* at 5. The SEC determined that Seymour Holtzman's proposal to form a committee to pursue sale of the bank substantially duplicated Berk-

shire's proposal and that Marc Holtzman's proposal was moot. *Id.*

Marc and Seymour Holtzman subsequently withdrew their proposals, and ONBANC included the remaining six proposals in its proxy statement to the shareholders. Berger Decl. ¶ 25. The shareholders defeated Berkshire's proposal to sell the bank. *Id.* ¶ 26. However, a majority of shareholders voted to pass three proposals. Garcia Decl. ¶ 23; Berger Decl. ¶¶ 26–27. One of these proposals did not receive the super-majority required for its passage. *Id.* The two remaining proposals were precatory and could not be enacted without approval from the board of directors prior to the shareholder vote. Berger Decl. ¶ 27. Finally, ONBANC claims that it was not required to recognize any of the proposals receiving approval from the majority of the shareholders because their proponents did not appear at the annual meeting held April 23, 1996. *Id.* ¶ 26. ONBANC did, however, announce the results of the voting. *Id.* ¶ 28.

On October 8, 1996, Holtzman and his wife sent ONBANC a letter enclosing a stockholder proposal for inclusion in the proxy statement ONBANC would send out for its 1997 shareholders meeting. Compl., Dkt. No. 1, ¶ 2, Ex. A; Answer, Dkt. No. 40, ¶ 2. The proposal requests ONBANC's board to "immediately take the necessary steps to achieve a sale or merger of [ONBANC] on terms that will maximize shareholder value." Compl. Ex. A at 2.

In his supporting statement, Holtzman stated "we could potentially see the value of our stock in [ONBANC] rise to $46.00–$58.00 [per share]." *Id.* at 3. Holtzman estimated the potential value of ONBANC's stock in a sale by multiplying current book value by the percentage over book value received for shares in five other banks (identified by name) that were bought "during the last several years." *Id.* at 2–3. Holtzman demanded that his proposal be included in the proxy materials for the annual meeting and also demanded a list of shareholders to facilitate shareholder solicitation. *Id.* at 1, 3.

The next day Holtzman disseminated a press release and accompanying cartoon. Compl. ¶ 3; Answer ¶ 3. The cartoon de-

picts ONBANC's corporate board room. Compl. Ex. D. On the door, the name "ON-BANCORP" has been altered to "OFFBAN-CORP." Several pigs dressed in business suits sit around the board room table. One pig says "Mr. Chairman, I think we have a problem! Several shareholder proposals were passed with over five million votes. What should we do??" Another pig responds "Forget the Shareholders ... This is *our* piggy bank!! Tell our lawyers to find a loophole to deny the vote." *Id.* ONBANC views this cartoon as a false and prejudicial commentary on the conduct of its directors at the 1996 annual meeting.

The press release announced Holtzman's proposal and stated that he was "considering nominating five outside directors with a mandate to sell [ONBANC]." Compl. Ex. B at 1. Holtzman estimated the potential value of ONBANC's stock at sale as he did in the supporting statement sent to ONBANC. *Id.* at 1–2.

According to ONBANC, Holtzman's public relations firm sent the release and cartoon to "over thirty newspapers, magazines, wire services and radio and television networks." Berger Decl. ¶ 33.

ONBANC claims that Holtzman again released the pig cartoon on October 17, 1996, and that this time he labeled two of the pigs with the names "Bob Bennett" and "C.F.O. Berger." Compl. ¶ 35, Ex. C; Berger Decl. ¶ 40. Berger is ONBANC's chief financial officer and Bennett its chairman, president and CEO. Berger Decl. ¶ 1; Bennett Reply Decl., Dkt. No. 53, ¶ 1. Holtzman denies this allegation and claims that he disseminated the labeled cartoon only in mid-May 1996 shortly after the 1996 shareholders meeting. Holtzman Decl., Dkt. No. 47, ¶¶ 12, 14, 23.

On October 25, 1996, the day ONBANC commenced this lawsuit, Reuters carried a story quoting Charles Garcia, Holtzman's son-in-law and counsel, as saying that the allegations in this lawsuit were "false, frivolous and a waste of corporate assets." Berger Decl. ¶ 43, Ex. 41. The Syracuse *Post–Standard* in an October 29, 1996, story quoted Holtzman as saying that the lawsuit was "poppycock, bull and they know it." *Id.* ¶ 43, Ex. 42. On November 3, 1996, the cartoon

version without Berger's and Bennett's names appeared as a paid advertisement in *The Times Leader* of Wilkes–Barre, Pa. Berger Decl. ¶ 44, Ex. 43. The following words appeared at the bottom of the cartoon: "COMMITTEE IN SUPPORT OF DIRECTORS WHO WILL SELL ONBANCORP, INC. The Participant Seymour Holtzman directly or beneficially owns a total of 211,839 shares of common stock." *Id.* Ex. 43. On the same date, the Syracuse *Herald American* reprinted the version of the cartoon naming Bennett and Berger as part of a story on Holtzman's proxy solicitation and this lawsuit. *Id.* ¶ 44, Ex. 1. On November 8, 1996, the Wilkes Barre *Times Leader* quoted Holtzman as saying "[i]t's the bank's standard tactic to be an obstructionist when any shareholder makes any proposal that they don't like" and that the allegations in this law suit are "a lot of baloney and making accusations is just another one of their tactics to malign me and get away from the real issue...." *Id.* ¶ 47, Ex. 46.

Holtzman announced the withdrawal of his proposal on November 19, 1996. *Id.* ¶ 48; *see also* Holtzman Decl. ¶ 21. However, the shareholder's estimate of profits that would accrue on sale of ONBANC was repeated in the Syracuse *Post Standard* in a November 20, 1996, story covering the withdrawal. Berger Decl. ¶ 48, Ex. 49.

## II. Procedural Background

ONBANC began this lawsuit by filing a complaint on October 25, 1996. The complaint alleges that Holtzman's press release and the cartoons are proxy solicitations within the meaning of 17 C.F.R. § 240.14a–1(*l*)(iii) and that dissemination of these materials violated Section 14(a) of the Exchange Act and several implementing SEC rules. Specifically, ONBANC claims that (1) issuance of the press release and cartoons without also furnishing a publicly filed proxy statement violated Rule 14a–3, 17 C.F.R. § 240.14a–3; (2) failure to file the proxy statement violated Rule 14a–6, 17 C.F.R. § 240.14a–6; (3) alternatively Holtzman violated Rule 14a–11, 17 C.F.R. § 240.14a–11, by failing to disclose the identity of participants in the solicitation or describe their

interests and failing to file eight copies of the solicitation materials with the SEC and the appropriate stock exchange; and (4) false and misleading statements concerning the value of ONBANC's stock in a sale and the integrity of the bank's board of directors in those solicitation materials violated Section 14(a) and Rule 14a–9, 17 C.F.R. § 240.14a–9.

At the same time that ONBANC filed its complaint, it also submitted an order to show cause seeking expedited discovery relevant to a proposed motion for a preliminary injunction and a schedule for submissions on the preliminary injunction motion. After hearing argument on November 4, 1996, I granted both parties expedited discovery on issues relevant to the preliminary injunction motion and set a schedule for submissions and hearing. In a telephone conference with the court on November 18, 1996, Holtzman's attorney announced that his client was withdrawing his shareholder's proposal because of alleged injuries he had suffered in a bicycling accident. Thereafter, the parties made an attempt to settle their differences. However, those efforts proved unavailing. I heard oral argument on the preliminary injunction motion on December 16, 1996. The parties agreed that an evidentiary hearing was unnecessary.

## DISCUSSION

### I. Summary of the Parties' Positions

As discussed previously, ONBANC contends that both Holtzman's press release and the cartoons allegedly issued on October 6th and 17th constitute proxy solicitations. Although ONBANC also claims that Holtzman violated certain SEC filing requirements, the bank principally bases its claim for injunctive relief on allegedly false and material statements Holtzman made in the press release and cartoons. In particular, ONBANC claims that (1) the cartoons inaccurately imply that ONBANC's directors acted improperly with regard to the 1996 shareholder proposals and (2) by failing to explain fully his methodology for calculating the obtainable price for ONBANC's stock as well as the limitations of that methodology, Holtzman presented false and misleading valuation material. ONBANC also contends that the

November 3, 1996, *Times Leader* advertisement was false and misleading in that it refers to a "Committee in Support of Directors Who Will Sell ONBANCorp., Inc." without disclosing that Holtzman is the only member of that committee. *See* Berger Decl. Ex. 43. Plaintiff urges that each of these statements or failures to disclose is material because "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote," *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Finally, ONBANC urges that Holtzman's allegedly false and misleading solicitations necessarily will cause the bank and its shareholders irreparable harm.

Holtzman disputes each of ONBANC's claims and argues that (1) the cartoons and press release did not constitute solicitation materials or are exempt from SEC solicitation requirements; (2) the press release and cartoons are neither false and misleading nor material; (3) ONBANC has failed to show irreparable harm; (4) ONBANC has failed to properly plead scienter; and (5) ONBANC's claims are barred both by laches and by First Amendment considerations.

### II. Defining the Record

Before turning to the merits of ONBANC's application, I note that plaintiff has requested that I strike or disregard certain submissions from defendant. First, ONBANC seeks to strike Seymour Holtzman's declaration, dkt. no. 47, because Holtzman refused to appear for a deposition. Holtzman based his refusal on injuries he allegedly suffered in a bicycle accident. However, Holtzman's wife testified that since Holtzman's accident, he has made plans to travel from Florida to Pennsylvania, conducted his business, driven a car, and dined out. Lowe Reply Decl., Dkt. No. 51, ¶ 9, Ex. C at 82–84. Although Holtzman's wife's testimony casts significant doubt on her husband's inability to appear for the scheduled deposition, the current record does not allow me to find that he could have appeared. Moreover, ONBANC did not move to compel Holtzman's

testimony. Therefore, I decline to strike or disregard the Holtzman declaration.

ONBANC also requests that I strike paragraphs 7, 9, 10, 13, 24, 25, 28, 30 and 31 of the Garcia Declaration, dkt. no. 46, because they are not based on the declarant's personal knowledge. I agree as to all of the listed paragraphs except 7 and 9 and will disregard paragraphs 10, 13, 24, 25, 28, 30, and 31.[1]

## III. Standard

■■■ The party seeking a preliminary injunction must show (a) "it is likely to suffer possible irreparable injury" in the absence of an injunction and (b) "either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *Reuters Ltd. v. United Press Int'l, Inc.* 903 F.2d 904, 907 (2d Cir.1990) (quoting *Coca–Cola Co. v. Tropicana Prods, Inc.,* 690 F.2d 312, 314–15 (2d Cir.1982)); *see also Capital Real Estate Investors Tax Exempt Fund Ltd. Partnership v. Schwartzberg,* 917 F.Supp. 1050, 1058 (S.D.N.Y.1996) (applying standard to proxy solicitations). Irreparable injury is the most important criterion for granting a preliminary injunction. *Reuters,* 903 F.2d at 907. Lacking a showing that irreparable injury is likely, an examination of the merits is unnecessary. *Id.* Moreover, the harm alleged must be imminent, not remote or speculative. *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989). In the proxy solicitation context, "[i]rreparable injury results from the use of false and misleading proxies when the free exercise of shareholders' voting rights will be frustrated." *Krauth v. Executive Telecard, Ltd.,* 890 F.Supp. 269, 287 (S.D.N.Y.1995) (citing *J.I. Case Co. v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1980)).

## IV. Irreparable Injury

■■■ ONBANC alleges that it will be irreparably injured in the absence of an injunction (1) requiring Holtzman to correct misleading information he has already interjected into the marketplace and (2) enjoining the dissident shareholder from committing any future violations of Section 14(a) of the Act and its implementing regulations. To make its showing on irreparable harm, ONBANC relies on a declaration by Walter A. Denby, senior vice president of D.F. King & Co., Inc, a proxy solicitation firm. Denby Decl., Dkt. No. 34. Denby states that it is his opinion that the cartoons and press release will "inevitably affect the way present and future ONBANC shareholders perceive ONBANC, its directors and its management and influence their investment and voting decisions relating to their ONBANC shares." *Id.* ¶ 4. He claims that these influences will have effects lasting through the 1997 shareholders meeting. *Id.* In particular, Denby contends that materials attacking the integrity and competence of board members influence shareholders' votes on matters such as the election of directors and other strategically important issues and notes that five members of ONBANC's board must stand for reelection at the Spring 1997 meeting. *Id.* ¶¶ 7, 10. According to Denby, information on integrity "is also critical to an investor's fundamental investment decision as to whether to continue to hold a security." *Id.* ¶ 7. Denby suggests that sales of the bank's stock "could drive shares into the hands of speculators who are only interested in short-term, one-time profits." *Id.* Denby also opines that Holtzman's valuation estimates could be "very influential to shareholders in making investment and voting decisions." *Id.* ¶ 6. Finally, Denby claims that it will be difficult for ONBANC to correct the misleading impression left by Holtzman's materials because its communications to stockholders will be seen as self-serving. *Id.* ¶ 9.

---

**1.** ONBANC also initially requested that I strike the affidavit submitted by Bernard S. Black, dkt. no. 48. ONBANC withdrew this request at oral argument. Had ONBANC not withdrawn its request, I would have been inclined to grant it. The Black affidavit consists largely of legal argument in violation of L.R. 7.1(c)(1) and is a transparent attempt to evade the page limitations imposed by the court. Counsel are cautioned against repeating this behavior in future submissions to the court.

Holtzman counters that (1) the annual meeting is not scheduled until April 1997; (2) he has withdrawn his proposal to sell ON-BANC and will not offer an alternate slate for the board of directors; (3) his proposal was only precatory and would not have been binding on the board of directors in any case; and (4) because he has withdrawn his proposal and the deadline for proposals has passed, the only proposals that will be presented to shareholders are ONBANC's own proposals.[2]

According to both parties, the deadlines for submitting additional proposals and for nominating alternative directors for the 1997 shareholders meeting has now passed. At oral argument, ONBANC argued that notwithstanding Holtzman's—or anybody else's—inability to put proposals before the voters for the 1997 meeting, ONBANC had already suffered irreparable harm because of the harm done to its reputation in the marketplace and would continue to be subjected to irreparable harm because Holtzman could renew his fight in 1998.

In addition to its factual showing, ON-BANC makes two legal arguments. First, the bank argues that a finding of irreparable harm flows inexorably from a showing that defendant has disseminated a materially false proxy solicitation. Second, ONBANC urges that Holtzman's possibly temporary withdrawal from the proxy wars does not defeat ONBANC's right to a preliminary injunction.

In support of its argument that irreparable harm is presumed by-product of a materially false solicitation, ONBANC cites several cases. *See, e.g., Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 382–83 n. 5, 90 S.Ct. 616, 620 n. 5, 24 L.Ed.2d 593 (1970) (holding that where there had been material non-disclosure, shareholder need not show objective unfairness of a merger proposal to set aside shareholder vote approving it and stating in dictum that shareholder may obtain injunctive relief in advance of a shareholder meeting based on material non-disclosure); *ICN Pharmaceuticals, Inc. v. Khan*, 2 F.3d 484, 489 (2d Cir.1993) (stating court could affirm

issuance of preliminary injunction on basis of uncontested nondisclosures); *Treadway Cos. v. Care Corp.*, 638 F.2d 357, 385 (2d Cir.1980) (remanding case to district court to order a new election because district court's order prohibiting parties from disclosing certain of the court's tentative findings that were material to shareholders' vote conflicted with spirit of Section 14(a)); *General Aircraft Corp. v. Lampert*, 556 F.2d 90, 96–97 (1st Cir.1977) (holding that district court properly enjoined shareholders from acquiring further shares of company stock and from soliciting proxies or consents until they amended filing required by Section 13(d) of the Exchange Act to make proper disclosure because "very *raison d'etre* of Section 13(d) was thwarted by appellants' continued failure to disclose the statutorily required information"); *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir.1966) (holding that plaintiff seeking preliminary injunction because of defendant's violation of the Exchange Act need only show "that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired").

ONBANC's argument lacks merit for several reasons. First, none of the cases ON-BANC cites squarely holds that a showing of a materially false statement in a proxy solicitation obviates the need for a showing of irreparable harm.

■  Second, all of the cited cases involve live proxy battles. The *Mills* court considered a merger proposal that had been approved arguably based on misleading omissions. 396 U.S. at 377, 90 S.Ct. at 618. *Treadway* addressed the results of an actual election. 638 F.2d at 360, 385. Similarly, in *General Aircraft*, the Second Circuit affirmed the district court's grant of an injunction in the context of a proxy contest the shareholder intended to wage at the corporation's imminent annual meeting. 556 F.2d at 93. In *ICN Pharmaceuticals*, the shareholder filed a "consent statement" seeking the authorization of shareholders to replace the corporation's board of directors prior to the

---

**2.** Holtzman also claimed that the Denby declaration was fatally marred by allegedly inconsistent advice Denby's firm offered to Holtzman on a previous occasion. However, I do not find a conflict between the advice Denby's firm allegedly gave Holtzman and Denby's position on this motion. *Compare* Garcia Decl. ¶¶ 4–9 *with* Denby Reply Decl. ¶¶ 2–4.

time the district court entered its preliminary injunction. 2 F.3d at 486, 488. Finally, the district court in *Studebaker* entered an order forbidding a dissident shareholder from using shareholder authorizations he had solicited in violation of the Exchange Act to obtain a list of shareholders that he wanted to use to obtain more proxies for corporation's next annual meeting. 360 F.2d at 694. Therefore, to the extent any of these cases can be read to suggest that a violation of the Exchange Act ordinarily will give rise to irreparable harm, its holding is not transferrable to a context like the present one in which there is no live proxy battle.

Finally, five years after the Supreme Court decided *Mills*, it held that *Mills* did not stand for the proposition that mere violation of the Exchange Act establishes irreparable harm. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 64–65, 95 S.Ct. 2069, 2078–79, 45 L.Ed.2d 12 (1975). Instead, the court held that courts must judge an application for injunctive relief according to traditional equitable principles which require a separate showing of irreparable harm. *Id.* Therefore, ONBANC cannot prove irreparable harm merely by showing a material false solicitation.

ONBANC's second argument fares no better. In support of its argument that Holtzman cannot defeat its right to injunctive relief by a temporary cessation of allegedly illegal conduct, the bank cites *SEC v. Okin*, 139 F.2d 87 (2d Cir.1943), and *Canadian Javelin Ltd. v. Brooks*, 462 F.Supp. 190, 194 (S.D.N.Y.1978). *Okin*, which addressed the appeal of a district court order granting a permanent injunction, 139 F.2d at 88, is of limited utility in determining irreparable harm because irreparable harm is not a separate requirement for a permanent injunction. *See Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir.1985). Moreover, ONBANC fails to distinguish between a proxy contestant's possibly temporary cessation of illegal conduct or promise to do so, *see Canadian Javelin*, 462 F.Supp. at 193, and Holtzman's actions in (1) withdrawing his proxy proposal and (2) failing to nominate directors or submit any new proposals before the deadline for the 1997 shareholders' meeting. Whether Holtzman took these measures for tactical reasons as suggested by ONBANC or because of his health, he is now effectively off the field of battle for the 1997 meeting.[3]

I therefore judge ONBANC's application using traditional equitable principles. I find that ONBANC has not demonstrated irreparable harm and, in particular, has not demonstrated that the interest protected by Section 14(a)—the free exercise of shareholders' voting rights—likely will be harmed irreparably prior to a full trial in this matter. *See Mills*, 396 U.S. at 381, 90 S.Ct. at 620. There will not be a contested election at the 1997 shareholders' meeting. Nor will the shareholders consider a proposal to sell the bank. Moreover, all proposals that the shareholders will consider have been submitted by management. ONBANC's reliance on the fact that five directors must stand for reelection at the 1997 meeting is simply too attenuated to meet the test for irreparable harm. *See Tucker Anthony Realty*, 888 F.2d at 975 (harm must be imminent, not remote or speculative). First, the fact that the directors will be unopposed presents a serious obstacle to any finding of irreparable harm.[4] Second,

3. In a recent letter sent to the court after the record for this motion had closed, ONBANC suggests that the mere possibility that shareholders may withhold proxies suffices to establish irreparable harm. *See* Letter of George H. Lowe of 1/10/97, Dkt. No. 60, at 3. The record contains no evidence that shareholders are likely to withhold proxies in any appreciable number based on Holtzman's statements to date. Should Holtzman launch a campaign urging shareholders to withhold proxies in support of any of ONBANC's proposals or to vote against current board members, a different situation would be presented and ONBANC would be free to renew its request for injunctive relief.

ONBANC has also complained of lawsuits brought against it, members of its board of directors, and its counsel by Holtzman, his wife, and Holtzman's attorneys. The merits of these lawsuits are not before me, and any harm stemming from them is too attenuated from the proxy solicitation context to merit injunctive relief.

4. *Freer v. Mayer*, 796 F.Supp. 89 (S.D.N.Y.1992), which ONBANC cites in arguing that the election of five directors at the 1997 annual meeting sufficiently supports a finding of irreparable harm, cannot carry the burden ONBANC seeks to place on it. In *Freer*, a dissident shareholder claimed that a corporation had failed to include in its proxy statement information that the share-

ONBANC does not even claim that Bennett, the only director identified in the cartoon, must stand for reelection in 1997. Similarly, ONBANC has not identified any particular proposal to be voted on at the 1997 meeting that arguably could be tainted by Holtzman's press release or cartoons. Finally, Denby's remaining claims concerning impact on investment decisions and corporate reputation are speculative and do not relate to the purpose of the proxy solicitation rules.

Preliminary injunctions "protect the moving party from irreparable injury during the pendency of the action." *Buckingham,* 762 F.2d at 261. There is no indication beyond speculation that ONBANC will be irreparably injured before this matter can be reached for trial. Because ONBANC has not demonstrated the likelihood of possibly irreparable injury before this matter can be reached for trial, I must deny its request for a preliminary injunction and need not consider plaintiff's showing on the merits. Both parties should cooperate in establishing a schedule that will allow trial on a reasonably expeditious basis, and I refer this matter to Magistrate Judge David N. Hurd for a scheduling conference.

## CONCLUSION

For the reasons discussed, I deny ONBANC's request for a preliminary injunction.

holder felt adversely reflected on candidates for election to the board. The district court dismissed plaintiff's Exchange Act claims for failure to state a claim on which relief could be granted largely because the material the board had omitted was not required. *Id.* at 92–94. In the footnote on which ONBANC relies, the court noted that the dissident shareholder had argued correctly that he need not show that misstatements "decisively affected voting even though this was an uncontested election." *Id.* at 93 n. 10. The court's statement is accurate. *See Mills,* 396 U.S. at 384–85, 90 S.Ct. at 621–22. However, this statement—made in dictum in a decision premising dismissal on failure to state a claim—has no relevance to the issue of irreparable harm in a preliminary injunction motion. *See Rondeau,* 422 U.S. at 64, 95 S.Ct. at 2079 ("questions of liability and relief are separate in private actions under the security laws").